# HARDINA S. MORRIS, Adm'x
## v.
# THE INDIANAPOLIS AND ST. LOUIS RAILROAD COMPANY.

1. DEMURRER TO EVIDENCE.—A demurrer to evidence admits not only all that the plaintiff's testimony has proved, but all that it tends to prove. Every fact is to be considered as admitted which the jury could infer in favor of the plaintiff from the evidence demurred to.

2. EVIDENCE—PRESUMPTIONS.—The law requires that facts from which presumptions are to arise, should be established by direct evidence. A presumption which the jury is to make, is not a circumstance in proof, and is not of itself a legitimate foundation for a second presumption.

3. FORM OF DEMURRER TO EVIDENCE.—A properly formed demurrer to evidence should set out all such facts as the evidence has established, and also all such other facts as the evidence tends to establish.

4. STATEMENT.—In the present case, the fact that the employer had notice of the defect in the engine is proved, and from this and other circumstances connected with it in evidence, the court is of opinion the presumption fairly arises that the deceased was induced by the employer's servants to believe the defect would be speedily obviated, and continued in the employment for that reason.

ERROR to the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding. Opinion filed April 14, 1882.

Mr. JAMES M. DILL, for plaintiff in error; that it is the duty of an employe, on discovering a defect in machinery, to report it to the master, and if he continues to work after discovering the defect, he will be deemed to have assumed the risk, unless he has been induced by his employer to believe the defect will be remedied, cited Camp Point M't'g Co. v. Ballou, 71 Ill. 417; C. & A. R. R. Co. v. Munroe, 85 Ill. 25; Laning v. N. Y. C. R. R. Co. 49 N. Y. 521; Wharton on Negligence, § 220.

Notice of the defect to the foreman and master mechanic of the company, was notice to the company: C. & N. W. R. R. Co. v. Jackson, 55 Ill. 492; Hough v. Railway Co. 100 U. S. 213.

A railroad company should be held to the highest degree of

vigilance in respect to its engines: C. & A. R. R. Co. v. Shannon, 43 Ill. 338; I. & St. L. R. R. Co. v. Estes, 96 Ill. 470.

A demurrer to evidence admits not only all that plaintiff's testimony has proved, but all that it tends to prove: Fent v. T. P. & W. R. R. Co. 59 Ill. 349; Phillips v. Dickerson, 58 Ill. 11; Crowe v. The People, 92 Ill. 231.

Mr. JOHN T. DYE and Mr. J. M. HAMILL, for appellee; that a servant can not recover for injuries resulting from defective machinery, if he voluntarily continues in the employment with full knowledge of the defect, cited Wharton on Negligence, § 220 ; Camp Point M'f'g Co. v. Ballou, 71 Ill. 417; Pennsylvania Co. v. Lynch, 90 Ill. 333; Priestly v. Fowler, 3 M. & W. 1 ; Assap v. Yates, 2 H. & N. 768; Gibson v. Erie R'y Co. 63 N. Y. 453; Laning v. N. Y. C. R. R. Co. 49 Ill. 534 ; Honner v. Ill. Cent. R. R. Co. 15 Ill. 550; C. C. & I. C. R. R. Co. v. Troesch, 68 Ill. 545.

BAKER, J. This suit was brought by Hardina Morris, administratrix of George Morris, deceased, to recover damages resulting from his death; which, it is alleged, was caused by a defect in the pilot attached to the locomotive upon which he was acting as engineer, in the employment of defendant in error. It is claimed this pilot was negligently adjusted at such a height from the rail that it passed over a railroad tie across the track without removing it, and that the engine was thereby thrown from the track, and said Morris killed. The allegation in the second count in the declaration is, that defendant " had full notice and knowledge of the defective and improper construction and adjustment of said pilot, as aforesaid, and that said Morris was induced to remain in the employ of this defendant, by the defendant then and there inducing said Morris to believe and understand that said defect would be speedily remedied." Upon a trial before the judge and a jury, after plaintiff rested her case, defendant demurred to the evidence, and there was joinder in demurrer. Thereupon the court sustained the demurrer, and rendered judgment against plaintiff for costs.

The demurrer did not, as a properly framed demurrer to evidence should, set out all such facts as the evidence established, and

also all such other facts as the evidence tended to establish; but it simply embodied the evidence introduced before the jury for the purpose of proving the facts. However, upon this informal demurrer, admitting the truth of the evidence tending to prove the facts instead of admitting the facts themselves, as issue was joined, depend the rights of the parties to this controversy. The rule that must govern in ascertainment of those rights is this: that the demurrer admits not only all that the plaintiff's testimony has proved, but all that it tends to prove. In the early case of Dormady v. State Bank of Illinois, 2 Scam. 236, it was said: "Every fact is to be considered as admitted which the jury could infer in his favor, from the evidence demurred to." See, also, Fent v. T. P. & W. R. R. Co. 59 Ill. 349, and Crowe v. People, 92 Ib. 231. The following facts we regard as established beyond controversy by the evidence admitted to be true by the demurrer:

1st. That just a week before Morris was killed, he and Estes discovered that the pilot of engine No. 30 was adjusted so as to stand and run above the rail from 7 to $7\frac{1}{2}$ inches at the front and six inches in the rear. The measurement was first made by Estes at East St. Louis, and afterwards by Thode and George Gray, at the round house in Mattoon, and again, almost immediately thereafter, by Sanborn.

2nd. Gray was foreman of the round-house at Mattoon, and Sanborn was the master mechanic.

3rd. A pilot properly adjusted should stand above the rail 4 inches at the heel and $4\frac{1}{2}$ inches at the nose.

4th. On the evening of February 7th, 1876, engine No. 30 was attached to the night passenger express train, and left East St. Louis at 7:15 P. M., and near Venice, in Madison county, a railroad tie had been placed across the track; the wheels of the engine came in contact with it, the engine was thrown from the track, and Morris was killed. The tie was over 7 inches thick; it was a new solid tie, and had no marks on it except those made by the wheels of the engine; *the nose of the pilot had passed over it without touching it*, thus showing that the pilot was running more than 7 inches high.

5th. Morris was 38 or 39 years old at the time of his death.

He was earning $100 per month, and left a widow and child dependent on him for support.

6th. Defendant expressly admitted that "*said George Morris was killed as alleged in the declaration.*"

7th. The accident was caused by the defective pilot. The defendant had full notice of this defect. The important question for consideration, is whether the proofs sufficiently sustain the averment in the declaration that " said Morris was induced to remain in the employ of the defendant, by the defendant then and there inducing said Morris to believe and understand that said defect would be speedily remedied." Estes was fireman on the engine, and he says in his cross-examination, that when the defect was first discovered, Morris " gave me to understand that it would be fixed when we got to Mattoon; he was either going to have it fixed, or something to that effect, but I took it that way. I told him I would fire there, but I wouldn't fire it any more; and I would fire it there on a daylight run. He either said it would be fixed, or he was going to have it fixed, one of the two; it was to that effect. That is the way I took my impression; which one of the two words he used, I don't know."

It also appears from the testimony of this witness, that Morris had been running as engineer on defendant's road for seven or eight years, and probably much longer. Thode says : " My attention was called to it by Morris, the engineer; he wanted me to change it and let it down. I told him I had no authority without he went to George Gray; that I had no orders to work for engineers only as ordered by Gray or Sanborn, the master mechanic. George Gray then came to me and wanted me to fix it, and took the rule and measured it, and he went to the heel and measured it. I told George Gray our time is mighty short, and we had plenty to do, and I didn't see how we could get around to it. He told me to put on a new pilot; I told him I had none; he went around with me in the machine shop to hunt for one, and couldn't find one; none of them were high enough. He went back with me to the engine, and told me to let it down; to bore new holes in the bumper-beams and lengthen out the braces. He started to order the engine in the

round house, and I started to the shop, and I met Mr. Sanborn, the master mechanic, and reported to him. He went back to the engine and made some look at it. I told him I got such orders to let the pilot down, or get a new pilot. I told him we were on short time, and if he gave us full time, I could make a new one, or a little over time. He said he had no orders; he couldn't do it. I told him then we have to let it down some; put a new cap on top of her pilot, and let her down some; bore new holes into her bump. He says, that is a new bump; I won't have her bored out to pieces. He wouldn't have it done by a damned sight. He went to his work, and I went to my business; that ends the pilot. Mr. Sanborn went to his work and I to mine, and let the pilot alone."

In his cross-examination this witness says: "George Morris told me he wanted me to fix that pilot and let it down; I told him to go to George Gray; that I had no authority to do so. This conversation was about a week or two before the engine got in the ditch." And he further says: "Me and Mr. George Gray both, and I think Mr. Sanborn, measured it after we went there, too. George Gray and Mr. Sanborn were not both present at the same time; me and George Gray first; he pulled out a rule and placed it down and says "how is that for high, seven or seven and a half scant, and six inches at the heel, measured from the floor, which is even with the rail."

It also appears from the testimony of Estes, the fireman, that the engine made a day-light run to Mattoon on Tuesday morning, the day after the defect was first discovered; and that he then quit work on account of the sickness and death of his sister, and did not go back on the engine until about four o'clock in the morning of the next Monday, the accident occurring Monday night. And also, that he knows " nothing" about " what was done or what was said in the mean time" in regard to the engine and pilot. We think it quite clear from this testimony, taken as a whole, that Morris, after the arrival of the passenger train at Mattoon on Tuesday, gave information to George Gray that the pilot was defective.

Immediately on the discovery at East St. Louis, of the defect,

he told his fireman either that it would be fixed, or that he was going to have it fixed on the arrival of the engine at Mattoon. In pursuance of this declared intention he called on Thode, the foreman on wood-work and locomotives, and wanted him to fix it; wanted him to change it and let it down. Thode says: "I told him I had no authority without he went to George Gray; that I had no orders to do work for engineers, but only as ordered by Gray, or Sanborn, the master mechanic. George Gray then came to me and wanted me to fix it;" and Thode says in his cross-examination, "I told him to go to George Gray." Gray did come to Thode and direct him to fix the pilot: How did Gray get information the pilot was defective? Only three persons, so far as the evidence discloses, knew at that time of the defect: the engineer and fireman who had the locomotive in charge, and Thode; the two former had only discovered the condition of the pilot the day before, and while at a distant place, and Thode had only been informed of the matter shortly before Gray came to him. The testimony of the fireman rebuts any presumption that he gave the information to Gray; and it is absurd to suppose it came from Thode, for he says "George Gray *then came to me* and wanted me to fix it," and he further says, "I spoke to George Gray as I have already stated, and to Mr. Sanborn;" and this is in answer to a question that would necessarily have called out anything he might ever have said "to any officer or employe of the defendant in relation to the adjustment of this pilot." We think the conclusion irresistible that Morris, obeying the direction of Thode, went to Gray, notified him of the defect in the pilot, and requested him to have it repaired. The other question presented for solution is, perhaps, more difficult. Did Gray induce Morris to believe and understand that the defect in the pilot would be speedily remedied? Is there testimony in this record proving, or fairly tending to prove, that Gray so induced Morris to believe? If there is no such evidence, then the demurrer was properly sustained; but if competent testimony tending to establish the affirmative of this proposition, was before the jury, then plaintiff was entitled as matter of right to have a verdict rendered

by the jury upon the evidence as a whole, or in case the issue was withdrawn from the jury by a demurrer, to have a judgment upon the demurrer in her favor; and this on the ground she had either established, or introduced evidence tending to establish, all the material averments in her declaration.

The very foundation of indirect or circumstantial evidence, is the establishment of one or more facts from which the inference is sought to be made, and the law requires that these facts, from which the presumption is to arise, should be established by direct evidence, as if they were the very facts in issue. 1 Starkie on Ev. 57. There must be an open, visible connection between the principal and evidentiary facts, and deductions from them; and it is not permitted that a decision should be made on remote inferences. A presumption which the jury is to make is not a circumstance in proof, and is not, of itself, a legitimate foundation for a second presumption. In the case at bar, from the fact which is fully proven by circumstances, that plaintiff's intestate reported the defect in the pilot to Gray, it is not admissible to deduce a second presumption or conclusion of fact, *i. e.*, that Gray induced him to believe the defect would be speedily obviated. But we know of no rule of law that would preclude a court or jury from drawing several conclusions or presumptions of fact from the same state of circumstances. It was the immediate and declared intention of the deceased to have the defect at once remedied. He reported it forthwith to Thode and requested it should be fixed. Thode directed him to Gray, and Gray immediately came to Thode and gave orders that this should be done.

The account given by Thode of his consecutive interviews with Morris, with Gray, and with Sanborn, is all given in answer to a single interrogatory and in narrative form, and he states the occurrences in their natural order and sequence in point of time; and it appears from his answer that Gray came to him and directed him to repair the pilot, and then took out his rule and made measurements, etc. There is here an open and visible connection between the facts out of which the first presumption arises and the fact sought to be established by the second presumption; in reality, the two presumptions are

so intimately connected that they both naturally arise out of the same set of circumstances, and are component parts of the same transaction.

The circumstance that Gray, without first making an examination, at once directed the repairs, we regard as fairly tending to prove he had assured Morris the pilot would be fixed. So, also, the haste and anxiety Morris exhibited to have the pilot immediately and properly adjusted, which continued up to the time Gray ordered it done, taken in connection with the fact that he thereafter made no complaint, is a circumstance tending to show he had assurances it would be done. In United States v. Crusell, 14 Wall. 1, it would seem from the opinion of the court that the judgment was based only upon a presumption founded on a presumption, and yet the judgment was affirmed.

In United States v. Rose, 2 Otto, 281, in commenting on Crusell's case, the court says: "The question was, whether seventy-three bales of cotton of the plaintiff's had been forwarded, with a much larger amount, to the officer in charge of military transportation at Nashville, and by him turned over to the treasury agent. There was no direct proof that the plaintiff's cotton was included in the shipment; but there was proof that the treasury agent forwarded the cotton received by him to the supervising agent at Cincinnati, where a sale was soon after made, and some of the bales sold were marked with the plaintiff's mark. The question, therefore, whether the military officer who shipped the large quantity, had shipped with it the cotton of the plaintiff, was not left to depend upon the presumption that he had done his duty. There was distinct and independent proof of it in the fact that some of the plaintiff's cotton had reached Cincinnati and been sold there. The presumption was only confirmatory of what had been proved by evidence, and in confirmation of that proof it might be invoked."

This is authority for saying we may invoke the fact, of which there is plenary presumptive proof, that Morris notified Gray of the defect and requested it should be obviated, as confirmatory of the other fact, that Gray did give assurance to Morris the defect would be remedied, tending to prove which there are

in our opinion, circumstances established by direct evidence. This is, at best, a hard case in which to apply the rule of law that compels an employe to abandon his employment, or else be considered to have waived all objections to working with defective machinery. It would seem from the evidence, plaintiff's intestate was awake to his duty to the railroad company and to the public, when he, upon the very heels of his discovery that the pilot was improperly adjusted, gave notice thereof to the proper officers of the corporation; and the testimony for the plaintiff, and that is all we have before us, seems to show a very considerable degree of negligence on the part of the company. We think the demurrer to the evidence was improperly sustained. The judgment is reversed and the cause remanded, and a *venire facias de novo* awarded.

Reversed and remanded.