THE ATCHISON, TOPEKA & SANTA FE RAILWAY COM-
PANY v. W. C. BAUMGARTNER, *as Administrator, etc.*

No. 14,664.   (85 Pac. 822.)

SYLLABUS BY THE COURT.

RAILROADS—*Injury at Crossing—Basing one Presumption upon
Another.*  In an .action for damages by the administrator of
a deceased person who was. killed while driving a team over
a railway-crossing, where there is no testimony showing what
deceased did immediately before and at the time he went upon
the crossing, it is presumed that he was in the exercise of
proper care and that before going upon the crossing he both
looked and listened for an approaching train, and from this
presumption the jury may so find; but in the absence of any
testimony showing what happened the jury are not warranted
in assuming, in order to account for his going upon the
crossing, that his team became frightened and that he lost
control of them.  One presumption of fact cannot, in law,
become the basis of another presumption of fact.

Error from Harvey district court; PETER J. GALLE,
judge.  Opinion filed June 9, 1906.  Reversed.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,*
for plaintiff in error.

*Branine & Branine,* for defendant in error.

The opinion of the court was delivered by

PORTER, J.: The administrator of the estate of A.
Baumgartner recovered damages in the sum of $3000
for the death of his intestate, who was killed by a
train of the plaintiff in error at a highway crossing.
The railway company brings error.

The petition alleged, as negligence of defendant, in
substance: (1) That defendant negligently constructed
the highway crossing in such a manner as to make it
unsafe and dangerous; (2) that in view of the danger-
ous nature of the crossing defendant was running its
train at an excessive and dangerous rate of speed;
(3) that defendant failed to sound the engine whistle
for such crossing; (4) that when deceased was ap-

proaching the crossing his team became frightened and unmanageable because of the sudden approach of the train from their rear, without the whistle of the engine being sounded, and were beyond his control, running along the highway and approaching the crossing; that the engineer and fireman upon the engine of the train discovered and saw the danger and imminent peril of the deceased caused by their failure to sound the whistle and the sudden and uncontrollable fright of his team in ample time so that, by the exercise of reasonable care, the control of the engine could have been had and its speed slackened so as to have protected and saved the life of the deceased, but that the engineer and fireman negligently failed to perform such duty.

The answer of the defendant was a general denial, and an averment that the deceased was guilty of failure to exercise proper care by driving his team upon the track immediately in front of an approaching train.

Mr. Baumgartner, the deceased, lived on a farm in Harvey county. In December, 1903, he was traveling from Hutchinson with a wagon-load of salt, drawn by a team of horses, and reached the crossing where he was killed at about eleven o'clock in the forenoon. He was sixty-eight years of age and in the possession of all his faculties. It was a clear day, somewhat chilly, with a wind from the north. He was driving east along the section-line road, about fourteen miles from the neighborhood where he lived, and the train which struck him was going in an easterly direction. The railway runs a little south of east, almost parallel with the highway, for a mile and intersects the highway at an acute angle. About fifteen rods west of the crossing the beaten track of the public road bears off to the south side of the road and then curves back to the north in order to cross the railway-track at right angles.

No one who testified saw the deceased when he was struck or immediately before he went upon the crossing. One witness, Mr. Howell, going west with a team, passed him about 300 yards west of the crossing and

said that he was sitting on the spring seat, driving along in the usual way, with his horses in a walk. This witness soon after passing the deceased looked ahead and saw and heard the train coming from the west, nearly a mile away. He testified that afterward he turned and looked once at Baumgartner and thought the latter was then about entering the curve in the road to the south, which was about 250 feet from the crossing; that he could not tell exactly what the team was doing, but the last he saw of them they were either running or going out of a walk. This witness was then more than a quarter of a mile from the deceased and the train was somewhere near the whistling-post. Two other witnesses who drove past Mr. Baumgartner west of the crossing testified that they had barely time to make the crossing themselves ahead of the train, and did not look back, and therefore knew nothing of what deceased was doing at the time he came to the crossing; and that when they passed him he had control of his team and the team was going in a quick walk. Here the direct evidence as to what occurred ends.

The jury in answer to special questions found that the train was running forty-five miles per hour; that deceased looked or listened for the approach of a train before going on the crossing; and also found that by looking he could have seen an approaching train for the distance of a mile. Although there was a conflict in the evidence as to whether the train whistled at the post 1340 feet west of the crossing, the general finding was against the railway company, and there was evidence to support the finding. There was no evidence that deceased looked or listened for an approaching train before he went upon the crossing, but, in the absence of any evidence on this point, the law presumes from the natural instinct of self-preservation that he both looked and listened. (*Dewald v. K. C. Ft. S. & G. Rld. Co.*, 44 Kan. 586, 24 Pac. 1101; *C. R. I. & P. Rly. Co. v. Hinds*, 56 Kan. 758, 44 Pac. 993; *Railroad Co. v.*

*Hill,* 57 Kan. 139, 45 Pac. 581; *Railroad Co. v. Gallagher,* 68 Kan. 424, 75 Pac. 469, 64 L. R. A. 344.)

It was claimed on the trial that the noise of the train suddenly approaching from the rear, and the sound of the whistle just before the train reached the crossing, frightened the team; that the deceased lost control of them; and that this accounted for his presence on the track. Counsel for defendant in error argue here, as they doubtless urged upon the jury, that there is no reasonable explanation of the conduct of the deceased except to assume that he lost control of his team. Otherwise, it is said, he would not have been upon the crossing, for he looked and listened and could see and appreciate the obvious danger of attempting to cross.

Upon the presumption of the law that, in the absence of all evidence of what deceased did, he is held to have exercised proper care and caution, counsel seek to base another presumption, and to argue that under the circumstances of this case it must be presumed that deceased lost control of his team. But if this was the fact it must be established by proof. The law will not presume, in the absence of all proof, that any particular thing caused the deceased to go upon the crossing. When facts are proved or admitted it is proper to draw from them all reasonable inferences in order to sustain a verdict, but the law requires that the facts from which presumptions are to arise must be established by direct evidence. (Starkie, Ev., 10th Am. ed., 57.) The jury were properly instructed that they might presume, in the absence of any evidence as to the conduct of deceased when he went upon the crossing, that he both looked and listened for an approaching train; but this presumption is not a circumstance in proof nor does it furnish legitimate foundation for a second presumption. (*Railway Co. v. Rhoades,* 64 Kan. 553, 68 Pac. 58; *Phila. City Pass. Railway Co. v. Henrice,* 92 Pa. St. 431, 37 Am. Rep. 699; *Morris v. I. & St. L. R. R. Co.,* 10 Ill. App. 389; Lawson, Presump. Ev., 2d ed., rule 118, p. 652; 22 A. & E. Encycl. of L. 1236.)

The case must therefore be reversed, and a new trial granted for failure of proof. There was no proof whatever in reference to this matter, and yet it is apparent that the jury in the general verdict adopted the theory of defendant in error. In their oral argument counsel practically concede that there is no evidence in the record which supports such a finding, but it is argued that in the opening statement of counsel for defendant below certain things were said which amounted to an admission that deceased just before going upon the crossing lost control of his team. It becomes necessary, therefore, to examine this statement. Counsel for the railway company stated, in substance, that the engineer and fireman, after the engine passed the whistling-post, both saw Mr. Baumgartner away down near the crossing; that the team was walking and the engineer gave the alarm whistle; that the man did not turn, the team started from a walk, and the engineer applied the brakes; that when the team started he could not tell whether the man was trying to drive across in front of him or whether the team merely heard the whistle and started; that the evidence would show that the road first turns south and then makes a turn and comes north, and as the team turned to the south the engineer felt relieved; that the team then whirled and went upon the crossing and the engine struck the team and wagon and killed the man.

Neither the engineer nor the fireman testified. There is no admission in this statement that the team became unmanageable or that deceased lost control of them. It is plain that the use of the words "turned" and "whirled" in connection with the turn in the wagon road meant no more than that the engineer saw that they suddenly turned, which the sharp turn in the road would have required if they had merely followed the wagon road, going in a trot or out of a walk. The team might have turned and whirled first to the south as the road turned, and then to the north, and the deceased have had perfect control of them. It is probable

that the jury gave to this statement an effect not warranted by the language used, and upon it based a finding that the team became unmanageable. To support such a finding there must be proof or an admission of the fact. In the absence of all proof, as observed, the law makes no presumption of what the facts were.

The cause is reversed and remanded for another trial.

All the Justices concurring.