**HUTCHERSON et al. v. AMARILLO ST. RY.**
**CO.** (No. 78-2853.)

(Commission of Appeals of Texas, Section B.
June 21, 1919.)

1. DEATH ☞58(1)—PRESUMPTIONS—CONTRIB-
UTORY NEGLIGENCE.

In an action for the death of a servant
caught in machinery, where there is no evidence
as to how the injury occurred, deceased is enti-
tled to the presumption that he exercised due
care for his safety.

2. MASTER AND SERVANT ☞286(20)—INJURY
TO SERVANT—NEGLIGENCE—SUFFICIENCY OF
EVIDENCE TO GO TO JURY.

In an action for the death of a servant
caught in an electrically driven merry-go-round,
circumstantial evidence, in the light of the pre-
sumption that he did not negligently expose
himself to danger, held sufficient to go to the
jury on the issue of defendant's negligence.

3. MASTER AND SERVANT ☞218(3)—ASSUMP-
TION OF RISK — ELECTRICITY — DEFECTIVE
SWITCH.

An electric merry-go-round operator, having
no experience with electricity, and no knowl-
edge that the switch is defective and likely to
close the circuit by its own weight so as to
start the machine while he is making repairs,
is not chargeable with knowledge of the danger.

4. MASTER AND SERVANT ☞285(6), 288(11)—
INJURY TO SERVANT—PROXIMATE CAUSE—
ASSUMPTION OF RISK—QUESTIONS FOR JURY.

In an action for the death of an inexperienc-
ed servant, caught by cog wheels of an elec-
trically driven merry-go-round, which started
because of a defective switch while he was mak-
ing repairs, whether the proximate cause of
death was due to defendant's negligence, and
whether deceased assumed the risk incident to a
defective switch, held to be questions for the
jury.

Error to Court of Civil Appeals of Sev-
enth Supreme Judicial District.

Action by Mrs. Annie T. Hutcherson and
others against the Amarillo Street Railway
Company. Judgment for defendant was af-
firmed by the Court of Civil Appeals (176
S. W. 856), and plaintiffs bring error. Judg-
ment of the Court of Civil Appeals and of

the district court reversed, and cause remanded.

J. L. Penry, of Ft. Worth, and L. C. Barrett, E. T. Miller, and Marvin Jones, all of Amarillo, for plaintiffs in error.

Turner & Rollins, of Amarillo, for defendant in error.

SADLER, J. On the trial of this case, after all the evidence on behalf of plaintiff had been introduced (the defendant offering no evidence), the court peremptorily instructed a verdict for the defendant, on the ground that primary negligence proximately causing the injuries resulting in the death of Hershel Hutcherson had not been shown. The Court of Civil Appeals sustained the action of the trial court. 176 S. W. 856. In the primary opinion, the appellate court reversed and remanded for a new trial, holding that the evidence sufficiently raised the question of negligence to require the submission to the jury. However, on rehearing it held that the deceased assumed the risk as a matter of law, and based its affirmance of the judgment of the lower court on that theory. We refer to the two opinions by the Court of Civil Appeals for a more extended statement of the pleadings and evidence. Such other facts as may be pertinent will be stated in connection with the discussion of the questions presented in the application for writ of error.

We have carefully considered the record, first, to ascertain whether there is any evidence of primary negligence which requires the submission of the case to the jury, and, secondly, whether from the evidence deceased should be held to have assumed the risk as a matter of law.

The rules of law touching these two subjects are so well settled in this state—have been announced so often—that it can add nothing to the force of these principles to restate them here. Applying the known and settled rules of law upon negligence to the facts of the instant case, it becomes pertinent only to inquire whether the evidence in this regard will stand the test of these principles of law to the advantage of the plaintiff in error.

While we have concluded that there is some evidence in the record tending to show negligence on the part of the defendant in error proximately resulting in the injuries to the deceased, yet it is very unsatisfactory, and we must not be understood as intimating our opinion with reference to its sufficiency. The Court of Civil Appeals found that the evidence raised the issue. We think the finding should be sustained.

There is evidence which tends to show that the switch used in connection with the operation of the merry-go-round was defective, and had a tendency to automatically close the circuit so as to permit the power to be transmitted to the motor driving this machine.

Four things were necessary to act in unison in order to start the merry-go-round. The power had to be turned in on the main line connecting the merry-go-round with the power house, the fuse in place, the switch closed, and the throttle, or rheostat, open, to let the electricity to the motor. Each of these devices required personal operation. No defect is shown in any one of them, except in the switch. The fuse, the switch, and the rheostat were at the merry-go-round. The power house was under the control and direction of the superintendent and of the foreman. There is no positive evidence showing when, or by whom, or under what circumstances, these several controls were brought into harmony. It necessarily devolves upon a jury to consider the circumstances in the record to ascertain the facts.

The master-wheel, and pinions meshed into it, through which power was transmitted from the motor to it, and by which power was taken from it to operate the mechanism controlling the movement of the horses, were open, that is, uncovered. The driving pulleys were not covered. The shaftings were unboxed. It is claimed that this made an unsafe place to work. There is no evidence showing any duty incumbent upon the deceased to work upon or in proximity to these pulleys, shafts, or cogwheels when the machine was in motion. He had been warned not to do so. There appears no reason why a man of ordinary prudence, though intensely ignorant of applied mechanics, who helped repair this machine, and must be presumed to have been familiar with the conditions of these cogwheels, should not know that it was dangerous to come in contact with the pulleys, shaftings, or cog-gearing while the machine was in motion. When motionless, evidently, no possible danger could exist by reason of the uncovered mechanism. It was unsafe to work in proximity to or upon these only when the machine was in motion. The motor and its mechanism were railed off, with the switch near the gate entering the inclosure. The masterwheel and cogwheels were on top of the machine and above the operator some distance. The arrangement was such that the manager or operator could stop the machine by removing the fuse, or opening the switch, or closing the rheostat. These were accessible to, and under the control of, the deceased. Under these facts, the place was safe so long as no connection was made of the electricity with the motor.

The absence of lock-nuts, cotter-keys, and buckle-yokes is not shown to have been responsible for starting the machine, and should not be charged with the accident. The machine had just been repaired and painted, and while not in motion a loose nut could have been tightened without danger.

There is evidence justifying the conclusion that the deceased was on top of the machine doing some character of repair work near the master-wheel, and that he was caught by the cogs operating on it when the machine started. It appears that some nuts were loose in the vicinity of this master-wheel. After the accident, a monkey-wrench and a tool box were found near the master-wheel, and some of the clothing of deceased was meshed into these cogs.

[1] Did he go on top while the machine was in motion? In reaching a reasonable answer to this question it must be held in mind that the deceased is entitled to the presumption that he exercised due care for his safety, and that he did not voluntarily and negligently expose himself to danger. This presumption, favorable to the deceased, arises, since the evidence does not account for how the injury occurred, and no one saw him at the time of the accident. It is an element of evidence to be considered by the jury along with the other evidence in arriving at a conclusion on the facts.

It is said "the instinct of self-preservation and the disposition of man to avoid personal harm re-enforces an inference that a person killed or injured was in the exercise of ordinary care." 16 Cyc. 1057; T. & Ft. S. Ry. Co. v. Frugia, 43 Tex. Civ. App. 48, 95 S. W. 563.

In Allen v. Willard, 57 Pa. 374, Willard was killed by falling into an open cellar encroaching upon a sidewalk. No one saw the accident, and he was discovered the next morning dead in the cellar. The defendant sought to charge him with contributory negligence, and the Supreme Court of Pennsylvania, in discussing the presumption above announced and its evidential effect, says:

"The natural instinct which leads men in their sober senses to avoid injury and preserve life is an element of evidence. In all questions touching the conduct of men, motives, feeling and natural instincts are allowed to have their weight, and to constitute evidence for the consideration of courts and juries."

The Supreme Court of Missouri says:

"The only presumption the law indulges in respect thereof [that is, the amount of care used by the deceased for his own safety] is that the deceased was in the exercise of ordinary care and diligence at all times in the discharge of his duties until the contrary appears." Parsons v. Missouri Pac. R. Co., 94 Mo. 286, 6 S. W. 466.

The Supreme Court of Kansas announces the same doctrine in A., T. & S. F. Ry. Co. v. Baumgartner. 74 Kan. 148, 85 Pac. 822, 10 Ann. Cas. 1094.

In the light of this presumption, the conclusion follows, in the instant case, that Hutcherson did not go on top of the machine while it was in motion. In the exercise of ordinary care for his own safety, it follows that he did not unnecessarily expose himself to the danger of being caught in the cogwheels; at least the jury were justified in considering this presumption as an evidential fact supporting that conclusion. A reasonable deduction, therefore, is that he did not go upon the machine while it was in motion. As we have said, however, the evidence tends to show that he was on top of the machine when the accident occurred; that it was in motion; that there were some loose nuts near the master-wheel. Taking these facts as developed, together with the other circumstances, a jury may be warranted in finding that he was at work repairing some defect on that part of the machine at a time when there was no danger to him; that the machine started or began its motion without his knowledge, and that he was caught in the cogwheels—the injury and death following.

There is evidence showing that he had previously been at work that day repairing the machine preparatory to its operation; that after the foreman left for town deceased was seen going in the direction of the power house. Some one made the connection, turned the electricity in on the line leading from the power house to the merry-go-round. It is not unreasonable to conclude that the deceased either did this or had it done, for the purpose of testing out the machine. Either of these hypotheses is justified by the circumstances.

[2] With the current on, in view of the presumption favorable to the deceased, it may be a reasonable deduction from the circumstances to say that when Hutcherson returned to the machine, it was then running, the connections there having been set before he left it; or that after he returned to it the connection was made and the machine started to test it. Since the machine was being repaired for operation, and the deceased was in charge of it, the circumstances tend to support this theory. Either finding the machine running on his return, or having connected it up after his return, may not a jury be justified in concluding that he discovered the loose nuts in the top of the machine, or something up there requiring adjustment? Finding this condition, what course would be taken by an ordinarily prudent man upon whom rested the responsibility of managing the machine? Is it improbable that he would have then stopped it, and sought to correct the developed trouble? That in the use of that care which he is presumed to have exercised, and also in obedience to the warning which he had received, he did not go on top of the machine while it was in motion.

From the facts and circumstances in evidence, may not a jury with reason find that he threw the switch and stopped the machine before going on top to make the re-

pairs? That while he was at work the defective switch, either from a jar or from its own weight, closed the circuit and started the machine; and that this took place without the knowledge of the deceased?

Since negligence may be established by circumstantial evidence, in the light of the presumption in favor of care on the part of the defendant, we are of the opinion that plaintiffs in error were entitled to have gone to the jury on the issue of negligence on the part of the defendant in error.

[3, 4] With reference to assumed risk on the part of the deceased Hutcherson, there is evidence tending to support the contention that he was inexperienced in handling electrically driven machinery, did not understand electricity, and did not understand its use in driving machinery. There is absolutely no evidence in this case tending to show that he knew that this switch was defective when opened, and that it would likely close the circuit by reason of its own weight or on account of a jar or vibration. The evidence is wholly wanting in charging him with knowledge of any defect in the switch.

In an examination of those cases where knowledge of danger has been charged to a servant operating a machine of this character, we find that in every instance the servant had knowledge of the defect, and had had experience with that or like machines or like instrumentalities. One in charge of a machine of the character in question may be presumed to know its mechanical workings until the contrary is shown; but, in the instant case, the evidence shows that the deceased had never had any experience with electricity or electrically driven machines. He was not warned of any defect in the switch, or of any danger which might result therefrom. No explanation seems to have been given to him with reference to the switch or any part of the starting machinery. So far as the record shows, this machine had never been in operation under the observation of the deceased prior to the date of the injury; he had had no opportunity to observe the switch or its condition.

If we have drawn the correct conclusion from the evidence, while he was in the top of the machine at work it was a safe place until the connection was made starting the machine. Without knowledge of the defective condition of the switch, we are of opinion that he was not in a position to appreciate any danger in being in the place where the evidence tends to show him at the time of the accident, and that he did not assume the risk incident to the closing of the defective switch. Whether the proximate cause of his death is chargeable to the negligence of the defendant in regard to the switch, and whether deceased assumed the risk incident to this defect, are questions for the jury.

We are, therefore, of the opinion that the judgments of the Court of Civil Appeals and of the district court should be reversed, and the cause remanded.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission on the question discussed.