## THE GLASGOW MARU.

(District Court, S. D. Texas, at Galveston. August 7, 1924.)

### No. 1178.

**1. Collision ⊂⇒105—Evidence held insufficient to exonerate a steamship from liability for collision with a moored tug.**

Under the rule which places the burden on a steamship which, in backing from her slip, came into collision with a tug properly moored at a pier, to exonerate herself from liability, circumstantial evidence, from which it was sought to draw an inference that there was a shoal on one side of the slip, and that such shoal caused the steamship to sheer, *held* insufficient.

**2. Collision ⬅➡96—Precautions should be taken before backing from slip.**

The backing of a vessel from a slip is a dangerous maneuver, and should not be undertaken until all precautions have been taken.

**3. Evidence ⬅➡54—Wharfinger cannot be held liable for negligence on an inference drawn from another inference.**

The wharfinger cannot be held liable for a collision between a vessel backing from its slip and a moored vessel, on the ground of negligence in permitting the slip to become shoal, where it is sought to be inferred from circumstantial evidence that the shoal existed, and on such inference to rest another that it was the cause of the collision.

In Admiralty. Suit by the Direct Navigation Company against the steamship Glasgow Maru, with cross-libel by claimant against the Southern Pacific Terminal Company. Decree for libelant against the Glasgow Maru, and cross-libel dismissed.

W. T. Armstrong and W. E. Cranford, both of Galveston, Tex., for libelant and cross-libelee.

Terry, Cavin & Mills, of Galveston, Tex., for libelant.

Lockhart, Hughes, Lockhart & Rayzor, of Galveston, Tex., for respondent.

HUTCHESON, District Judge. This is a suit for maritime tort, based upon the undisputed fact that the steamship Glasgow Maru, while backing out of a slip, collided with the Louise, which was moored properly at her regular berth. The slip was a private one, maintained by the Southern Pacific Terminal Company. There was considerable evidence of circumstances from which an inference was sought to be drawn that there was a shoal on the side of the slip where the Maru was berthed, and on which she attempted to back out, and it was further claimed that from this inference, thus deduced from circumstances, it should be further inferred that the sheer which caused the accident was the proximate result of the shoal.

There was direct and positive evidence on the part of the respondent that there was considerably more water on that side of the slip than the draft of the Maru as she backed out half loaded called for. There was direct evidence that some months before the slip had been dredged to 30 feet, and some months after the collision there was still more water than the Maru drew when she backed out. There was considerable evidence of the difficulty of other ships in getting out of the slip, and of the fact that they had sheered. The drafts of these ships were different; the circumstances were not clearly detailed, nor the times

when these occurrences happened definitely fixed.

The result of the whole matter was that the best that could be said for the Maru was that she presented circumstances from which an inference of a shoal condition might be drawn; that this evidence was not direct, and that she presented no direct evidence as to what caused the sheer, but only insisted that the circumstances which she relied upon to prove the shoal were also sufficient to support a further inference that the shoaling caused the sheer.

[1] Recognizing the obligation which the law casts on her. to explain the collision and exonerate herself from fault (The Gulf of Mexico [C. C. A.] 281 Fed. 77; The Virginia Ehrman and The Agnese, 97 U. S. 309, 24 L. Ed. 890; The Bayonne, 213 Fed. 216, 129 C. C. A. 560), the respondent Maru has undertaken to attribute the cause of the sheer which resulted in a collision to a shoaling in the slip, which they say is attributable to the neglect of the owner of the slip, and, in addition to seeking to exonerate herself from liability, she has a cross-action against the Southern Pacific Terminal Company, the owner of the slip, for the recoupment of such losses as she may be adjudged to pay. I have considered the evidence and briefs of parties, and am clear that the Maru has not sustained the burden which the law casts on her.

The Maru adverts to the fact of the narrow channel, the tendency of vessels to sheer where they smell the ground, and to the testimony of other sheers at the same place, as pointing to the existence of the condition of which they complain. This evidence, in my opinion, does not reach the point of proof sufficient to exonerate the vessel. Respondents in their brief say: "We can hardly agree with the court upon his statement upon oral argument that he would not be inclined to hold a vessel liable for mooring in a dangerous place."

[2] Counsel has misapprehended the statement of the court. What was said was that, if the Louise, while moored in her regular place at the dock, was in a dangerous place, such danger could only have arisen from improper handling of vessels coming out of the slip, and that a boat moored at her regular place did not have to anticipate careless and improper handling. While vessels, automobiles, engines, and trains of cars must at times be backed, as well as propelled forward, it is universally conceded that backing is a dangerous maneuver, and requires the utmost skill, especially in

a narrow channel. Vessels should not back out of a slip until all precautions have been taken.

Every fact offered in evidence tended, in my opinion, to inculpate rather than exculpate the Maru, and as between her and the tug Louise, whether there was or was not a shoaling in the slip, whether the Maru was going too rapidly or not, is immaterial to this decision, because the evidence showed without dispute that the Louise was at her regular dock, and that a vessel having the power to move or stop at pleasure in a channel of sufficient breadth collided with her. "The fact that in the circumstances of this case a steamboat did collide with the barge is conclusive evidence that she was not properly managed, and that she should be condemned to pay the damages caused by the collision." The Granite State, 3 Wall. 310, 18 L. Ed. 179.

[3] But respondents claim that, even if, as to the Louise, she must be condemned, she should have her action over against the wharfinger. On that point, while there is no uncertainty about the law that a wharfinger is chargeable with the exercise of reasonable care, and that if the evidence sufficiently shows a condition of danger in a slip which caused injury, if such condition was due to negligence, the wharfinger is liable, I do not know of any case where such liability has been rested, as in this case, upon conjecture and inference. The ordinary rule of evidence, which applies as well at common law as in admiralty, is that a presumption cannot be rested upon a presumption; an inference cannot be drawn from an inference. 10 R. C. L. 870.

In this case, without any direct evidence that there was a shoaling in the slip, the court is asked to infer from circumstantial evidence that there was such shoaling, and upon that inference to rest still another inference that the shoaling caused the sheer. This violates, not only the well-known rule that a wharfinger cannot be cast, in the absence of clear proof of his negligence, but the fundamental rule of evidence that one presumption or inference cannot be deduced from another. Atchison v. Baumgartner, 74 Kan. 148, 85 Pac. 822, 10 Ann. Cas. 1094, and note. A good case upon the obligation of the wharfinger, and the proof necessary to fix liability, is Stevens v. Maritime Warehouse Co. (C. C. A.) 263 Fed. 68.

It might be said, in passing, that all of the cases which I have been referred to are cases where both the faulty condition charged against the wharfinger and the resultants therefrom were proven. None have been cited where both the faulty condition and the fact of its causal connection with the injury are left to inference. I am of the opinion that the cross-libel should be denied.

Let a decree be drawn in favor of libellant against the respondent, and against respondent on its cross-libel, and, if the parties cannot agree on the amount of damages, referring the case to Adrian Levy, as commissioner, for assessment of the damages.