No. 35,413

Anna Mae Broyles, *Appellant*, v. The Order of United Commercial Travelers of America, *Appellee*.

(122 P. 2d 763)

Opinion filed March 7, 1942.

W. K. *Thompson*, of Topeka, argued the cause, and Leslie H. *Cable*, of Chanute, was on the briefs for the appellant.

T. R. *Evans*, of Chanute, argued the cause, and Robert N. *Allen*, of Chanute, and E. W. *Dillon*, of Columbus, Ohio, were on the briefs for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was an action to recover death benefits under an accident insurance policy. There were two trials in the district

court, at the first of which the Hon. J. T. Cooper presided as judge, and his death having intervened, the second was before his successor, the Hon. LeRoy Bradfield. At the first trial defendant's demurrer to plaintiff's evidence was overruled, and the defendant having elected to stand on its demurrer, the cause was submitted to a jury which returned a verdict in favor of the plaintiff. Thereafter, the defendant's motion for a new trial was allowed. At the second trial it was stipulated a jury should be waived and the cause submitted upon the transcript of the record of the first trial. After argument the trial court took the matter under advisement, and thereafter it sustained defendant's demurrer to plaintiff's evidence and rendered judgment against plaintiff for costs.

Plaintiff appeals, assigning as error the ruling on the demurrer, and the rendition of judgment against her. In view of what transpired, we may treat the matter as though the defendant's demurrer had been sustained when first interposed.

For our purposes the pleadings may be very much summarized. Plaintiff alleged she was the widow of Arthur N. Broyles, and named as beneficiary of any death benefits under an accident insurance policy issued by the defendant; that she notified defendant of injuries received by her husband on December 24, 1935, and of his death on December 29, 1935; that she furnished proofs of his death, and on February 26, 1936, the defendant notified her of its refusal to pay. These allegations are admitted by defendant's answer. Defendant's answer denied allegations of the petition that on the late afternoon of December 24, 1935, two daughters of plaintiff found Arthur N. Broyles on the floor of his place of business with a fractured skull; that he was taken to a hospital and there died on December 29, 1935; that the injury was not self-inflicted, but was accidental; that she was not present when Arthur N. Broyles received the injury and that the exact nature and manner thereof was unknown to her. In addition to the above admissions and denials, the answer alleged the death of Arthur N. Broyles was due to murder and to injuries intentionally inflicted by others.

Only two paragraphs of the accident insurance policy need be noticed. The indemnity provision is:

". . . against the results of bodily injury hereinafter mentioned, effected solely through external, violent and accidental means, herein termed the accident, which shall be occasioned by the said accident alone and independent of all other causes."

Under the heading of "Exemptions," it is provided there shall be no liability—

". . . to any person for any benefit for death resulting from murder or disappearance, injuries intentionally inflicted by others, resulting in death."

In view of the rule respecting test of sufficiency of evidence as against a demurrer (see, *e. g., Shoup v. First Nat'l Bank,* 145 Kan. 971, 975, 67 P. 2d 569; *Robinson v. Short,* 148 Kan. 134, 79 P. 2d 903; *Jones v. McCullough,* 148 Kan. 561, 83 P. 2d 669; *Trezise v. State Highway Comm.,* 150 Kan. 845, 96 P. 2d 637) we limit our review of plaintiff's evidence to that tending to make out a prima facie case under the rules hereafter mentioned. Margery L. Broyles testified that she was the daughter of Arthur N. Broyles, who was manager of a produce house in Chanute, and that she drove the family car for him and assisted him most of the day on December 24, 1935, because he was having trouble with a stiff leg. About four o'clock p. m. she went uptown and then home. About five o'clock she and her sister Barbara returned. Barbara got out of the car, went to the office door and returned and witness then went to the door. The door was locked. She saw her father lying on the floor and blood around his head. The sisters went home, talked with their mother, called the hospital for an ambulance, telephoned for a taxicab, and the mother and daughters went to the produce house. The cab driver broke the glass on the door and unlocked the door. The father was lying on the floor; he was not able to talk to anyone. He was put in the ambulance and taken to the hospital, where he remained until his death on December 29. During the times she was at the hospital he was unconscious and unable to talk. Her testimony concerning the fixtures in the office, their location, location of doors and windows, etc., need not be repeated.

Barbara Lee Broyles testified to about the same effect as did her sister with respect to finding the father, and that he died on December 29.

R. C. Gibson, brother-in-law of plaintiff, testified concerning the layout of the office; that he visited Arthur N. Broyles at the hospital the night he died, at which time his head was bandaged, and that after death he saw him at an undertaking parlor and the bandages had been removed. He was asked to describe the condition of deceased's head, and on objection being made there was colloquy between court and counsel, during which plaintiff's counsel

mentioned the policy required proof of external evidence of injury, whereupon defendant's counsel said:

"We have nothing like that here, nor plead in our pleadings at all."

The trial court, in a memorandum opinion, after reviewing the evidence, concluded that any determination that death resulted from the injuries must be based on a presumption, and that a person knowing the facts would naturally conclude death resulted from the injuries, but that conclusion must be based upon a presumption; that the evidence was silent as to how the injuries were received and there was no evidence showing the death resulted from violent, external and accidental means, and in order to find for plaintiff, death from accidental means must be presumed. It concluded that a presumption could not be based on a presumption, and in view of the decision in *McKenzie v. New York Life Ins. Co.*, 153 Kan. 439, 112 P. 2d 86, the demurrer must be sustained.

Preliminary to a discussion of the sufficiency of the evidence as against a demurrer, attention is directed to the provisions of the accident insurance policy heretofore mentioned. The burden was on the plaintiff to prove that the insured met his death as the result of bodily injuries effected solely through external, violent and accidental means, occasioned by the accident alone and independent of all other causes, and of that burden we shall treat later.

On the other hand, the burden of proof was on the defendant to prove its exemption from liability because the death may have resulted from murder or from injuries intentionally inflicted by others. (See *Lamb v. Liberty Life Ins. Co.*, 129 Kan. 234, 282 Pac. 699, and cases cited.) It was therefore not incumbent on the plaintiff to prove the death was not caused by one or more of specific things covered by the exemption provisions of the policy.

Insofar as plaintiff's proof is concerned, certain presumptions applicable are to be noted. First, there is a presumption that no sane person commits suicide. See *Mutual Life Ins. Co. v. Wiswell*, 56 Kan. 765, 44 Pac. 996, 35 L. R. A. 258; *Railroad Co. v. Hill*, 57 Kan. 139, 45 Pac. 581; 22 C. J. 94. Second, the presumption as to the cause of decedent's death is against murder. (*Warner v. U. S. Mutual Acc. Assoc.*, 8 Utah 431, 32 Pac. 696; *Travellers' Insurance Co. v. McConkey*, 127 U. S. 661, 32 L. Ed. 308, 8 S. Ct. 1360; *Lampkin v. Travelers' Ins. Co.*, 11 Colo. App. 249, 52 Pac. 1040.)

Passing for the moment the question whether the injuries caused the death, we shall consider whether they were effected solely by

external, violent and accidental means. There can be no doubt the proof was ample they were external and violent. Did plaintiff prove they were accidental? The general rule, as stated in 29 Am. Jur. 1082 (Insurance, § 1443), is:

"Generally speaking, one seeking to recover on a policy of insurance has the burden of proving a loss from causes within the terms of the policy. . . . In this respect, the authorities support the general rule that in an action on a policy insuring against death caused solely by external, violent, and accidental means, the burden of proof is on the plaintiff to show from all the evidence that the death of the insured was the result of accidental as well as external and violent means, but that where death by unexplained, violent, and external means is established, a presumption is thereby created or prima facie proof is thereby made of the fact that the injuries were accidental, without direct and positive testimony on that point, since the law will not presume that the injuries were inflicted intentionally by the deceased or by some other person."

See, also, 29 Am. Jur. 732 (Insurance, § 972). Also see notes in 20 A. L. R. 1123, 57 A. L. R. 972, and 116 A. L. R. 396, where many cases supporting the above quotation may·be found. And we are not without authority of our own. In *McCullough v. Liberty Life Ins. Co.*, 125 Kan. 324, 264 Pac. 65, 57 A. L. R. 963, it was held:

"Ordinarily where one person intentionally injures another without misconduct on the part of the latter, and unforeseen by him, such injury as to the latter is accidental.

"And where an accident insurance policy provided for payment in the event the insured should sustain bodily injury directly and independently of any other cause, through external, violent and purely accidental means, the killing of the assured by a third person, though intentional, is deemed accidental within the meaning of the policy if the killing was not brought about by the agency of the assured." (Syl. ¶¶ 1, 2.)

See, also, *Spence v. Equitable Life Assurance Soc.*, 146 Kan. 216, 69 P. 2d 713.

Under the above authorities, there is no question but that there was a prima facie showing the injuries received by the insured were accidental.

Did the injuries cause the death? We agree with the trial court that—

"A person knowing all the facts revealed by the evidence in the case would presume or conclude naturally that the death resulted from the injuries."

It is true no medical doctor testified that the injuries which the insured had sustained at the time he was found caused his death. When plaintiff sought to show the injuries were violent and external defendant's counsel objected, stating:

"We have nothing like that here, nor plead in our pleadings at all."

But beyond that the evidence showed that the insured was found with his head in a pool of blood, was then unconscious, was taken to a hospital where he so remained; that his head was bandaged and that after four days he died. We think a prima facie showing was made as to cause of death.

The trial court was of opinion the plaintiff was relying upon a presumption based on a presumption. We think not. It is to be noted that on occasion a distinction is drawn between presumptions and inferences, although often the words are used synonymously. See 20 Am. Jur. 165; note 95 A. L. R. 162; and *Duncan v. Railway Co.*, 82 Kan. 230, 233, 108 Pac. 101. We shall not attempt to draw the line of distinction between the two words.

It has been held that presumptions based on presumptions are insufficient to meet the burden of proof resting on the pleader. (22 C. J. 84; 20 Am. Jur. 168.) What is condemned is to draw an inference or presumption, and then base another inference or presumption on the one so drawn, for in such case the ultimate fact sought to be proved rests on conjecture. (See, *e. g., Railway Co. v. Baumgartner*, 74 Kan. 148, 85 Pac. 822; and *McKenzie v. New York Life Ins. Co.*, 153 Kan. 439, 112 p. 2d 86.) The rule above is not to be applied, however, where different inferences are made from an admitted or proven fact or state of facts. As was said in *Krug v. Mutual Life Ins. Co. of New York*, (Mo. App.) 149 S. W. 2d 393:

"There is another rule of long standing that has not been modified in any way and that is that as many inferences may be drawn from a fact, or a state of facts, as it will justify, so long as each has a factual foundation. *Morris v. E. I. Dupont de Nemours & Co.*, 341 Mo. 821, 822, 109 S. W. 2d 1222. These inferences are referred to as 'concurrent' ones in the *Wills* case, 345 Mo. 616, 134 S. W. 2d loc. cit. 129." (p. 400.)

See, also, *Morris v. Indianapolis, etc., R. Co.*, 10 Ill. App. 389; *Employers Liability Assur. Corporation v. Mills*, (Tex. Civ. App.) 81 S. W. 2d 1028.

In the case at bar it is true a presumption is indulged that the insured's injuries were accidentally received. The only other necessary element of plaintiff's proof that could be said to rest on presumption or inference was that the injuries caused death. Conceding that to be true, it did not rest on presumption of accident. Presumption of cause of death arose not from whether the injuries were purposely or accidentally inflicted, but from the proven fact the deceased received the injuries. The two presumptions arose out of the

same facts, they were concurrent, and one did not rest or depend upon the other.

Appellant asks not only that we reverse the ruling of the trial court on the defendant's demurrer to her evidence, but that we enter judgment in her favor for the amount of the benefits due under the policy, with interest, and for attorney's fees. It is true that at the first trial a verdict was directed. The record as abstracted does not disclose that any judgment was entered, but that a new trial was granted. At the second trial it was stipulated the record at the first trial should constitute the evidence, and on that record, the trial court sustained defendant's demurrer. The fact its ruling may have been erroneous does not now entitle plaintiff to judgment. Under the decisions heretofore mentioned, the demurrer having been overruled, the defendant may prove, if it can, that the exceptions included in the exemption clause of the policy apply.

The ruling of the trial court on the demurrer and its judgment in favor of the defendant are reversed and the cause is remanded with instructions to vacate the judgment and to overrule the demurrer.

HOCH, J., not participating.

WEDELL, J., not sitting.