THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. ELLEN E. HILL, *as Administratrix of the Estate of Charles W. Hill, deceased.*

### No. 8678.

INJURY AT CROSSING — *Contributory Negligence — Question for Jury.* Where a railroad crossing is obscure by reason of a growth of tall weeds and willows, the track several feet above the general surface of the highway with a steep ascent to the crossing, and a train, running at a rapid rate on a down grade at a late hour of a bright moonlight night, and giving no warning of its approach, collides with a horse driven to a two-wheeled cart, killing the driver, and there is no other eye-witness to the casualty, *held,* in an action brought by his administratrix to recover damages for his death, that whether or not the driver exercised ordinary care is a question of fact for the jury on the foregoing and other circumstances of the case, and that in its consideration the jury has the right to take into account the love of life or the instinct of self-preservation and the known disposition of men to avoid injury.

*Error from Jefferson District Court.*
*Hon. Robert Crozier, Judge.*

AFFIRMED.                    OPINION FILED JULY 11, 1896.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiff in error.

*Hamble Brothers,* and *Waters & Waters,* for defendant in error.

The opinion of the court was delivered by

MARTIN, C. J.: On August 8, 1890, Charles W. Hill died from the effects of injuries sustained at about 11 o'clock on the night of July 30, 1890, at a crossing of the railway of the plaintiff in error some two miles southwest of Nortonville, and about a mile before reaching his home, which was north of the crossing. At the May term, 1892, his widow, as administratrix, recovered a judgment against the plaintiff in error for $5,000, and this judgment is the present subject of review.

Hill left home in the morning, driving a horse which was hitched to a two-wheeled cart. He went first to Nortonville, with a view of going from there to Valley Falls. At Nortonville he met R. J. Eshom, who requested him to bring certain small castings belonging to a machine, and to leave them at his farm, in possession of a tenant. He got the castings at Valley Falls, and was last seen there about seven o'clock in the evening. He left the castings at Eshom's farm at some time between 10 and 11 o'clock, except a small piece, which was afterward found in his vest pocket. From Eshom's farm he went west to a road running north and south, which was the nearest way home, although not the best nor the most-traveled highway. The regular passenger-train from St. Joseph and Atchison to Topeka left Nortonville on time. At the place where the casualty occurred the train was running from east to west on a down grade and at a rapid rate of speed. About 800 or 900 feet east of the crossing the track curved to the north, and the train was hidden from view by the conformation of the ground. In driving north toward the crossing, however, a train might have been seen for a considerable

distance at different points of view if it had been at
certain places when those points were reached.  South
of and near the crossing there was a small bridge
spanning a gully; along which willows and high weeds
grew, and these tended to obscure the view of the
train when near the track.  The crossing was several
feet above the level of the highway, and there was a
steep ascent in crossing it.  There was considerable
evidence that the statutory signals were not given for
the crossing, and the plaintiff in error relies chiefly
upon the contributory negligence of Hill as a defense
to the action.

There was no eye-witness to the casualty except Hill
himself.  Upon arriving at Valley Falls, the engineer
discovered that the flagstaff had been struck by some-
thing ; that it was in an inclined position, and a por-
tion of it gone.  This flagstaff was a few inches from
the outside of the bunting beam, on the front portion
of the engine.  On arriving at Topeka the engineer
made further examination, and found evidences on the
left side of the engine that it had struck a horse.  He
then remembered a slight shock at the crossing in
question, and at his request the conductor telegraphed
back to the agent at Nortonville to get the section-
foreman and a hand-car and go to the crossing to see
what injury had been done.  This order was obeyed,
but nothing was found that night.  The next morn-
ing, however, the section-men found that Hill's horse
had been knocked a considerable distance and killed ;
that the cart was broken, and Hill had been thrown
into the gully and badly injured.  The section-men
testified that, when asked how the casualty happened,
he answered that he was drunk, and that he was pretty
full.  Mrs. Hill and a physician were sent for, and
were soon on the ground and Hill was taken home,

but he never seemed able to give any account of the occurrence after his conversation with the section-men, which was only of the nature above stated. There was evidence that Hill drank some intoxicating liquor while in Valley Falls, and the jury found that he was slightly intoxicated there, but not at the time he was injured. The distance from Valley Falls to the crossing was eight or nine miles. It was a bright moonlight night, the sky was clear, and there was a light breeze from the southwest. The jury found that Hill both looked and listened for the train before attempting to cross the track, but there was no evidence that he did either.

The court instructed the jury that it was the duty of Hill to look and listen for an approaching train before going upon the track, and that if he failed to do so the administratrix could not recover in the action. In explanation of this the court said :

"In considering the testimony in the case, as I have said to you casually, you have a right to take into consideration whatever common knowledge you have as intelligent men of how men do conduct themselves under the circumstances alleged to have surrounded this injury. And you have a right to consider all the testimony in determining whether he did do what the law required of him, judging it from the circumstances, because there is no testimony of an eye-witness as to what was actually done — from all the circumstances, taking into consideration the instincts of the man, his instinct of self-preservation, and anything else that would throw any light upon the question of whether or not he did take the proper precaution before entering upon this crossing."

No exception was taken to this instruction, and, besides, we think it it well supported by the authorities. In *Dewald v. K. C. Ft. S. & G. Rld. Co.*, 44 Kan. 586, 591, this court held that a jury may infer ordinary

care and diligence on the part of an injured person from the love of life or the instinct of self-preservation and the known disposition of men to avoid injury. But this presumption is overthrown when there is direct proof to the contrary. See also, *C. R. I. & P. Rly. Co. v. Groves*, 56 Kan. 601, 613 ; *Way v. Illinois Central Rld. Co.*, 40 Iowa, 341, 345. Counsel for plaintiff in error claim that the evidence conclusively shows contributory negligence on the part of Hill ; that the demurrer to the evidence should have been sustained, and, that being overruled, the instruction requested for a verdict in favor of the railroad company should have been given. Numerous cases are cited in support of this position, while counsel for defendant in error cite other cases tending to support the contention that the case was a proper one for the consideration of the jury. We deem it unnecessary to review the cases on either side. In this case the crossing was an obscure and dangerous one for several reasons. The highway was badly grown up with tall weeds and willows, the track was several feet above the general surface of the highway, the train was going at a very rapid rate, and yet perhaps making little noise, no steam being necessary, and the breeze was in a direction to carry away the sound. We do not know that Hill was familiar with the crossing, nor but that he may have had difficulty with his horse on the approach of the train. The presumption is that he exercised ordinary care, and we cannot say that this was overthrown by the evidence, and therefore we think that the case was a proper one for the consideration of the jury.

The judgment will be affirmed.

All the Justices concurring.