The Atchison, Topeka & Santa Fe Railroad Company v. George W. Aderhold, *Administrator*.

### No. 9828.

1. Railroad Crossing — *box culvert held part of, to be maintained by the company.* In constructing its railroad over a highway, a railroad company placed a box culvert about nine feet from and parallel with its track. It was at the foot of the embankment supporting the track, and was placed across the highway mainly for the purpose of draining and protecting the embankment; but it also formed a part of the approach to the crossing. *Held*, that it was a part of the railroad structure, and that it was the duty of the company to maintain it in a safe condition for persons traveling the highway.

2. Evidence Examined — *and held insufficient in action for negligence.* To sustain a recovery for injuries suffered through the alleged negligence of the defendant, it is not enough to show that it was negligent in some particular, but it must appear that the negligence in some way contributed to the injury; and upon an examination of the testimony it is *held* to be insufficient to sustain the verdict.

3. Interrogatories to Jury — *each to present a single material fact.* Each special interrogatory submitted to the jury should be so framed as to present distinctly a single material fact involved in the issues of the case.

Error from Jefferson District Court. Hon. Louis A. Myers, Judge. Opinion filed June 5, 1897. *Reversed.*

*A. A. Hurd, O. J. Wood* and *W. Littlefield,* for plaintiff in error.

*Waters & Waters,* for defendant in error.

Johnston, J. This was an action brought against the Atchison, Topeka & Santa Fe Railroad Company by George W. Aderhold, as administrator, to recover damages for the death of his son, John E. Aderhold, who was killed in a collision with a freight train. The casualty occurred at a highway crossing in the country, on a clear April day in 1892. At the point where

the accident occurred, the highway runs north and south, and the track of the Railroad Company approaches the highway from the west, upon a curve. The country south of the crossing slopes to the north, so that there is a slight cut in the highway on the south of the railroad track, while on the north side the ground is about level with the track. In the approaches on each side of the track, and about nine feet from the rails and parallel with them, the Railroad Company placed plank culverts, about sixteen feet long, for the purpose of draining the track and completing the approaches to the crossing. These box culverts had been sunk in the ground on a level with the highway and covered with dirt. Planks had also been placed on either side of each rail in the manner required by the statute.

John E. Aderhold, who was between eighteen and nineteen years of age, had frequently traveled over the crossing and was familiar with the surroundings. On the day of the accident he was driving northward toward Valley Falls a team of horses attached to a farm wagon. Just before approaching the crossing, he was noticed by a witness to be driving on a slow walk, with his head bent foward, apparently looking in the bottom of the wagon. A view of the track could be had from the highway toward the east for some distance, except where it was obstructed by a house and barn which were near to the crossing. About noon of that day, a freight train, consisting of a locomotive and twelve box cars, approached from the west, on a down grade, and was running at the rate of from twenty-five to thirty miles an hour. When the horses had passed partly over the track, the locomotive ran into the front of the wagon, throwing the horses on one side of the track and Aderhold and the principal part of the wagon on the other, and instantly killing

Aderhold and the horses. The house of J. W. Rose was about two hundred feet from the railroad crossing, and there, as has been stated, Aderhold was seen, with his head down, driving on a slow walk toward the crossing. No one saw him after that time except the men upon the train, who testified that, when they first saw him, he was driving at a walk, with his head down, but that as he approached the track he looked up and saw the train, and, partly rising upon his feet, attempted to urge the team over the track ahead of the locomotive.

The casualty is alleged to have been caused by the negligence of the Company in failing to build and maintain a safe and suitable crossing. The principal complaint is in regard to a hole in the culvert on the north side of the track, which, it is alleged, had been there so long that the Company knew, or should have known, of its existence. It was also alleged that the whistle of the locomotive was not sounded, nor the bell rung, on approaching the crossing.

The jury found in favor of the plaintiff below, but also found that the whistle was sounded eighty rods from the crossing, as the statute requires, and that when Aderhold was discovered by the engineer he applied the air-brakes and did all in his power to stop the train.

The negligence relied on to sustain the verdict is the defect in the crossing. If the box culvert is a part of the crossing which it was the duty of the Railroad Company to maintain, then it must be held that the crossing was defective. In or near the wagon track there was a hole in the culvert, which some witnesses say was about six or eight inches square, and others, that it was about eighteen inches long and twelve inches wide. It was noticed by a witness traveling over the highway about two or

three weeks before the accident occurred. The culvert was a necessary part of the railroad and had been constructed and previously maintained by the Railroad Company. The main purpose of the culvert was to drain and protect the embankment which supported the track. The highway was established before the railroad was built, and it therefore became the duty of the Railroad Company to restore the highway to its former state, or to such a state as not necessarily to have impaired its usefulness. Gen. Stat. 1889, ¶ 1207, § 4. After the highway had been properly restored, the duty still remained upon the Company to maintain a reasonably safe crossing over its tracks. It would not do to say that the road-overseer had control of the crossing over the track and structure of the Company, nor to hold him responsible for its maintenance. It was the duty of the Company to maintain its track in a suitable and safe condition, and the absolute control of the same was necessary to the accomplishment of that purpose. The culverts being a necessary part of the structure, we think the court ruled correctly in holding that it was the duty of the Company "to repair any and all holes in its culverts when the same would endanger the safety of persons traveling the highway."

*1. Culvert held part of railroad crossing.*

The question remains, however, whether the defect or hole in the culvert in any way contributed to the injury. In this respect the testimony appears to be insufficient. It is not shown that the hole was seen by the horses or that it impeded them in passing over the railroad. There is no testimony that the horses slackened their speed after starting over the crossing, or that the condition of the crossing delayed or hindered them to any extent. The only testimony in the case as to the conduct of the driver and the

action of the horses on the crossing, was given by the trainmen, and it clearly tends to show that there was no hindrance or delay on account of the hole on the other side of the track. Indeed, if the evidence of these witnesses was accepted, and there were no others who saw Aderhold drive upon the track, the court would be compelled to hold that he did not exercise ordinary care for his own safety. They state that, while the team was in a walk, and before starting over the crossing, Aderhold looked at the train, and then urged his horses into a more rapid pace only to reach the crossing in time to collide with the train. According to their testimony, he saw the train in time to have avoided the danger and the disastrous consequences; but, if what they say is true, it would seem that he misjudged the distance the train was away and the time required to pass over the crossing. The jury, however, disbelieved and disregarded their testimony in this respect; for, in response to an interrogatory as to whether Aderhold before going upon the track looked to ascertain if a train was approaching, they answered, "There is no evidence that the jury accepts on this point one way or the other." It was the duty of Aderhold, before going upon the track, to look and listen for an approaching train; but notwithstanding the jury found that he exercised due care, they also made the specific finding that there was no evidence that he looked in the direction of the approaching train just before driving onto the railroad crossing.

It is argued that some of the testimony given by these witnesses was so inconsistent and unreliable that the jury could not give credit to any of it. It is true that some of the testimony given by them as to the respective distances that the train and Aderhold were away from the crossing when Aderhold was first

discovered by the trainmen, is somewhat incredible; and this may have led the jury to disbelieve all of the testimony in respect to what was seen at the crossing. In the nature of things it would be difficult for persons on a moving train to closely estimate distances, and as there was only a moment of time for them to take in the situation, it is easy to understand how a mistake might be made.    If it can be said that there was no testimony as to the care exercised by Aderhold, we may presume that, actuated by the love of life, the instinct of self-preservation and the known desire of men to avoid injury, he did exercise due care.    This presumption, however, is deemed to be overthrown where there is direct proof to the contrary. *Railroad Co. v. Hill*, 57 Kan. 139, 45 Pac. Rep. 581.

Assuming, however, that he is not chargeable with negligence, we are nevertheless required to hold that the testimony fails to show that the accident was the result of the negligence of the Company.    The culvert was defective, it is true; but who can say that the hole was a factor in causing the injury, or that the previous repair of the defect would have averted the injury?    It is possible that the horses might have been frightened and hindered by the hole; but things which are possible may never happen.    The accident may be accounted for in several ways, and other and more plausible theories of the collision may be readily suggested; but liability cannot be fixed on a bare guess, nor can a verdict rest on mere conjecture.

There is good cause for the objections made against the form of the interrogatories submitted in behalf of the plaintiff below.    Some of them embrace as many as seven distinct facts which are not closely related, and are so framed as to invite an affimative or negative answer to the entire group.    No question should be submit-

3. Interrogatories to jury must present single point each.

ted unless it is so framed as to present distinctly to the mind of the jury a single material fact involved in the issues of the case.

The judgment of the District Court will be reversed and the cause remanded for a new trial.