No. 57,903

In the Matter of the Marriage of LARRY JOHN ARNDT, *Appellant*, and ESTELLA LOUISE ARNDT, *Appellee*.

(719 P.2d 1236)

Opinion filed June 13, 1986.

*Stuart D. Mitchelson*, of Mission, argued the cause and was on the brief for appellant.

*Paula J. Laurenzana*, of Shawnee Mission, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This case is before the court on a petition for review of the decision of the Court of Appeals, Case No. 57,903, *In re Marriage of Arndt* (unpublished opinion filed January 30, 1986). We affirm the decision of the Court of Appeals, which affirmed the decision of the trial court. The issue before the court involves the interpretation and enforcement of a property settlement agreement entered into by the parties in their divorce proceedings.

Larry J Arndt, appellant, and Estella L. Arndt, appellee, were married on June 23, 1956. This union produced five children, all of whom were adults and self-supporting at all times pertinent to this action. The parties were divorced on May 18, 1983. The terms of the divorce decree incorporated a property settlement agreement which had been entered into by the parties. This agreement included the disposition of the couple's former residence and provided:

"The parties further agree that the WIFE shall make all mortgage payments upon the home which is legally described as follows, to-wit:

[Description omitted.]

*That the WIFE may remain in said home until such time as she remarries or the parties sell the property by mutual agreement, or until she moves out, whichever is the sooner.* The HUSBAND agrees to pay one-half of all maintenance expenses on the house for structural repairs." (Emphasis added.)

The agreement contains no provision as to the disposition of the property in the event the wife does remarry or decides to move out but both parties seem to agree that in such case the intent was that the property would be sold and the proceeds split between them. Title to the property is held by the parties in joint tenancy. The agreement was prepared by Larry Arndt's trial counsel. Estella was not represented and appeared pro se at the divorce hearing. No appeal was taken by either party.

The difficulty in this case stems from Estella's post-divorce cohabitation with Don Lichti. The record indicates that Lichti moved into the Arndt home in July of 1984 and presumably remains to this day. Lichti pays Estella $200.00 per month rent and pays one-half of certain household expenses. Estella and Lichti are not married. On December 13, 1984, Larry filed a motion to force sale of the Arndt residence, based on Estella's extramarital cohabitation. The motion was heard on January 8, 1985, and at the conclusion of the hearing the court denied Larry's motion, holding that the property settlement agreement did not preclude extramarital cohabitation. The district court also awarded Estella $250 for attorney fees.

Appellant's position on appeal appears to be twofold: (1) Estella's cohabitation with Mr. Lichti is immoral and against public policy, and (2) as Lichti is providing some support and maintenance to Estella, the continued occupancy of the house by Estella violates the intent of the agreement. The Court of Appeals, in affirming the district court, stated:

"It is conceded that Estella is now living in the house in a marital relationship with a male friend who pays $200 per month rent and splits the cost of groceries and the utilities.

"K.S.A. 60-1610(b)(3) provides in part:

'Matters settled by an agreement incorporated in the decree, other than matters pertaining to the custody, support or education of the minor children, shall not be subject to subsequent modification by the court except: (A) As prescribed by the agreement or (B) as subsequently consented to by the parties.'

"With respect to matters not pertaining to child custody, support or education, case law interpreting this subsection 'makes clear that matters settled by a contractual separation agreement which is subsequently adopted by the court as part of the divorce decree are not subject to later modification except as the agreement itself provides or by consent of the parties.' *Rasure v. Wright*, 1 Kan. App. 2d 699, 702, 573 P.2d 1103 (1977), *rev. denied* 225 Kan. 845 (1978).

"Notwithstanding this authority, Larry contends that the rent money received

by Estella is being used for her support and maintenance, and since the money is derived from the house in which he owns a one-half interest, he is to that extent being compelled to contribute to her support. He further argues that it is against public policy to require that he continue to contribute to the support of his former wife who is living with a paramour who is also contributing to her support.

"Larry relies primarily on *Herzmark v. Herzmark*, 199 Kan. 48, 427 P.2d 465 (1967), where the Kansas Supreme Court, based on public policy grounds, terminated the former husband's obligation to pay alimony following his former wife's remarriage. In *Herzmark*, however, the alimony award provided that it was to be paid '*until the further order of the court*' (199 Kan. at 49), and the award was not part of a settlement agreement incorporated in the decree. Consequently, the *Herzmark* court was not subject to the limitations imposed by K.S.A. 60-1610(b)(3). Thus, that court had the authority to modify the decree."

In *Fleming v. Fleming*, 221 Kan. 290, 559 P.2d 329 (1977), this Court refused to terminate the payment of alimony on public policy grounds where it was shown that the ex-wife was living with a paramour. In the instant case the agreement of the parties is clear, as far as it goes, and under K.S.A. 1985 Supp. 60-1610(b)(3) as well as our prior case law it is not subject to modification by the courts.

One other matter remains to be determined. Appellee Estella seeks an award of attorney fees under Supreme Court Rule 7.07(b) (235 Kan. lxxv) for defending the appeal in this Court and in the Court of Appeals. We do not find that the appeal in this case was frivolous and therefore the request for an allowance of fees is denied.

The judgment of the Court of Appeals and the judgment of the district court are affirmed.

SCHROEDER, C.J., dissenting: Under the facts of this case, the court is permitting the former wife to enjoy the benefits of a marital relationship without enforcing the burden imposed upon her by the property settlement agreement, *i.e.*, sale of the house upon her remarriage.

The public policy of this state favors marriage. *Schuchart v. Schuchart*, 61 Kan. 597, 60 Pac. 311 (1900). When that policy is extended to the facts before us, the wife has, in essence, "re-married." She lives in a marital relationship with a man who helps her with financial support.

In *Fleming v. Fleming*, 221 Kan. 290, 293, 559 P.2d 329 (1977), the former wife was awarded alimony payments under the divorce decree, those payments being contingent upon her death or remarriage. This court ruled the former husband was required

to continue alimony payments to his former wife after she began living with another man in a marital relationship. The former husband's attempt to establish the existence of a common-law marriage failed. The court recognized it to be against public policy for a woman to receive support from both a former husband and a present husband, but stated, "[H]ere we are not dealing with a former and a present husband. We are dealing with a former husband and a present boyfriend with no obligation to support."

On the facts in this case, the former wife's present boyfriend has accepted an obligation to help support her—he pays $200 a month in rent, pays one-half of the utilities, and helps buy groceries. While the former husband is not obligated to pay maintenance in this case, he is obligated to pay one-half of the maintenance expenses on the house for structural repairs. In that respect, the former husband is obligated to help support his former wife and, therefore, she is receiving support from a former husband and a present paramour ("present husband"), which is contrary to public policy. See *Herzmark v. Herzmark*, 199 Kan. 48, 427 P.2d 465 (1967).

In *Weseman v. Weseman*, 51 Or. App. 675, 679, 626 P.2d 942, *rev. denied* 291 Or. 118 (1981), if the former wife remarried, she was to pay her former husband $10,000, his share of the equity in their house. After the wife began living with her paramour, who shared household expenses, the former husband sued to recover $10,000 because she had "remarried." The Oregon court found the former wife's cohabitation was an artifice to avoid her burden under the property settlement agreement:

"She thus enjoys, to a substantial degree, the benefits of a legal marriage, while attempting to avoid her $10,000 legal liability in such a situation. A court of equity should look through the form of a transaction to its substance and enforce the contract sought to be avoided. [Citation omitted.] We do so here.

"The facts of this case amply demonstrate, from a practical standpoint, why a dissolution decree should not condition payment of a lien on remarriage. A former spouse may well choose, for his or her next living arrangement, a situation which resembles marriage but does not conform to the legal requirements . . . . To allow this defendant and her new domestic associate [citation omitted], by subterfuge, to enjoy the benefits of the former family home while evading the intended financial consequences is grossly inequitable."

In my opinion, upon finding the wife has "remarried" the court would not be modifying the property settlement to include a term or an intent wholly unexpressed when the contract was

executed. Contracts to settle property rights, whether made before or after marriage, are to be *liberally* construed to carry out the intention of the parties. *In re Estate of Gustason*, 173 Kan. 619, 623, 250 Pac. 837 (1952). Here, a liberal construction of the term "remarriage" would include the situation before us—a former wife enjoying the benefits of a marital relationship which includes financial support from her paramour.

It is respectfully submitted the decisions of the district court and the Court of Appeals should be reversed and the case remanded for sale of the house.

MILLER, J., joins the foregoing dissenting opinion.