No. 64,689

Arlene Evans, *Appellee/Cross-Appellant*, v. Provident Life & Accident Insurance Company, *Appellant/Cross-Appellee*.

(815 P.2d 550)

Opinion filed July 16, 1991.

*Kenneth M. Clark,* of Young, Bogle, McCausland, Wells & Clark, P.A., of Wichita, argued the cause, and *Paul S. McCausland,* of the same firm, was with him on the briefs for appellant/cross-appellee.

*Timothy J. King,* of Stinson, Lasswell & Wilson, of Wichita, argued the cause, and *Gerald D. Lasswell,* of the same firm, and *Cecil E. Merkel,* of Merkel Chartered, of Wichita, were with him on the briefs for appellee/cross-appellant.

The opinion of the court was delivered by

McFarland, J.: Provident Life & Accident Insurance Company (Provident) appeals a jury verdict awarding Arlene Evans the proceeds of a $300;000 accidental death policy issued by Provident insuring Dr. Grant Evans, husband of Arlene. Provident also appeals from the award of attorney fees. Arlene Evans cross-appeals from the amount of attorney fees awarded, the interest rate applied to the award, and the question of whether she should have been allowed to discover Provident's attorney fee costs.

Dr. Evans practiced in the medical specialty of obstetrics/gynecology for many years prior to his retirement in 1986. His retirement resulted from numerous health problems. On April 11, 1987, he received fatal burns in the bathroom of his hospital room in the psychiatric unit of Wesley Medical Center, Wichita. He was 65 years old and was being treated for major depression with melancholia.

Arlene Evans made claim under the policy. Provident denied the claim on the basis the death was the result of an intentionally self-inflicted injury, a suicide, and, accordingly, was not within the coverage afforded by the policy. This action was filed, and the jury found the death was accidental. The Court of Appeals affirmed the district court on all issues except the post-judgment interest question. *Evans v. Provident Life & Accident Ins. Co.*, 15 Kan. App. 2d 97, 803 P.2d 1033 (1990). This case is before us on petition for review. Additional facts will be stated as pertinent to particular issues.

## JURISDICTION

For her first issue, cross-appellant Evans contends this court lacks jurisdiction to hear Provident's appeal.

The journal entry of judgment in the case was entered on April 21, 1989, corrected by an order nunc pro tunc entered on May 8, 1989, and the order denying Provident's motion for judgment notwithstanding the verdict was entered on July 7, 1989. The journal entry determining the award of attorney fees to Evans was not entered until November 28, 1989. Provident filed its notice of appeal on December 27, 1989. The notice of appeal was within the 30-day limit set forth by K.S.A. 1990 Supp. 60-

2103(a) if the "entry of the judgment" is determined to be November 28, 1989.

On March 23, 1990, we filed our opinion in *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 246 Kan. 371, 789 P.2d 211 (1990), wherein we held:

"A final decision under K.S.A. 1989 Supp. 60-2102(a)(4), for appeal purposes, is a decision on the merits which does not require resolution of a motion or request for attorney fees before filing a timely notice of appeal." Syl. ¶ 1.

"Under the facts of the case, the entry of judgment by the district court was a final decision appealable as of right under K.S.A. 1989 Supp. 60-2102(a)(4) regardless of any unresolved question of attorney fees. Following *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 100 L. Ed. 2d 178, 108 S. Ct. 1717 (1988)." Syl. ¶ 2.

"A K.S.A. 40-256 motion or request for attorney fees is not a part of the merits of the underlying action, even though alleged in the petition, because attorney fees are not part of the compensation for a plaintiff's injury. Attorney fees traditionally have been regarded by the legislature as costs awarded to the prevailing party." Syl. ¶ 3.

Under the *Snodgrass* rule, Provident's notice of appeal should have been taken within 30 days of July 7, 1989. However, *Snodgrass* constituted a departure from our prior rulings and was not filed until several months after Provident's time for appeal would have expired. We believe the retroactive application of *Snodgrass* to bar the appeal herein would be unfair and inappropriate.

We conclude Provident's notice of appeal was timely under the rules then existing and that this court has jurisdiction in this appeal.

For its first three issues, Provident challenges certain jury instructions. These issues are interrelated and must be considered in context with each other. The claimed instructional errors concern:

1. failure to place the burden of establishing accidental death upon claimant, Arlene Evans;
2. giving improper instructions on the presumption against suicide; and
3. failure to instruct the jury on Provident's mental infirmity defense.

## BURDEN OF PROOF

The policy in question provided coverage for accidental death.

Death by suicide or intentionally self-inflicted injury was excluded. Accordingly, in addition to the requirements of proof on an ordinary life insurance policy, claimant had to prove the accidental cause of death.

The Court of Appeals adequately disposed of this issue as follows:

"Provident claims that the trial court's instructions erroneously placed the burden of proof on it. Instruction No. 9 set forth the burden of proof:

" 'Plaintiff claims that on April 11, 1987, the insured, Grant E. Evans, suffered accidental bodily injury resulting in the loss of his life as provided in the group policy issued by defendant.

" 'Plaintiff has the burden to prove that her claim is more probably true than not true.

" 'Defendant claims that Grant E. Evans died as the result of suicide or intentionally self-inflicted injury.

" 'Defendant has the burden to prove that its claims are more probably true than not true.'

"Provident notes in its brief that one of the 'limitations and exclusions' included in the policy denies coverage for suicide or intentionally self-inflicted injuries. Provident argues at some length in its brief, using quotations from treatises on insurance, a Tenth Circuit case from 1963, and a line of cases from New York decided in the 1930's, that Evans was required to prove that Dr. Evans' death was not suicide. Provident overlooks more recent Kansas case law that is clearly applicable.

" 'When an insurer seeks to avoid liability on the ground that the accident or injury for which compensation is demanded is covered by some specific exception to the general terms of the policy, the burden of proof rests upon the insurer to prove the facts which bring the case within such specified exception.' *Baugher v. Hartford Fire Ins. Co.*, 214 Kan. 891, Syl. ¶ 4, 522 P.2d 401 (1974).

"In *Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Assn.*, 215 Kan. 937, 529 P.2d 171 (1974), the court considered a case in which a decedent was killed in an aircraft owned by a flying club of which he was a member. The decedent was covered by an insurance policy which excluded " '[i]njuries sustained by the Insured while piloting or serving as a crew member of an airplane.' " 215 Kan. at 943. Both men aboard the plane were killed and there was no way to tell who was piloting the plane at the time it crashed. 215 Kan. at 943. In reversing the trial court's judgment for the defendant insurance company, the appellate court said: 'An insurance company seeking to avoid liability under an exclusionary clause in its policy for a loss which is otherwise covered has the burden of proving that the loss falls within the exclusion.' 215 Kan. 937, Syl. ¶ 10.

"Evans also relies on *Broyles v. Order of United Commercial Travelers*, 155 Kan. 74, 122 P.2d 763 (1942), in which the decedent was found on the floor with a fractured skull and the accidental death policy excluded death

due to injuries intentionally inflicted by the insured or others. In reversing judgment for the insurance company, the court said: 'In such a case as described, where the proof shows death of the insured by unexplained, violent and external means, a prima facie showing is made that the injuries were accidental.' 155 Kan. 74, Syl. ¶ 4.

"The trial court correctly instructed the jury on the burdens of proof to be carried by Provident and by Evans. Evans had to prove that there was an accidental bodily injury resulting in death if she were to recover, and Provident was required to prove suicide or self-inflicted injury if it were to prevail." *Evans v. Provident Life & Accident Ins. Co.*, 15 Kan. App. 2d at 100-02.

## PRESUMPTION AGAINST SUICIDE

Plaintiff's proposed instructions included three on the presumption against suicide. Provident's proposed instruction contained no reference to the presumption. Both sides objected to instruction No. 14 given by the court, which is as follows: "If you are unable to decide whether the cause of death was accident or suicide, your verdict must be that the cause of death was by accident."

PIK Civ. 2d 2.72 states:

"Because of the instincts of self-preservation and love of life which are characteristic of the normal person, it is presumed that ........ died as a result of accidental causes (natural causes) rather than as a result of attempted suicide. This presumption may be overcome if you are persuaded by the evidence that ....... intended to take his own life."

Provident contends that instruction No. 14 negated plaintiff's burden of proof on accidental death and permitted plaintiff to win by default.

The presumption against suicide is based on the nearly universal human characteristics of love of life and fear of death. 29 Am. Jur. 2d, Evidence § 217. In 29 Am. Jur. 2d, Evidence §§ 217, 219, the general rule on the presumption against suicide is stated as follows:

"In cases where the cause of death is in issue but there is nothing to show how death was caused, there is a negative presumption against suicide and an affirmative presumption of death by accidental means. In other words, all other things being equal, it is to be presumed when a person is found dead, that he did not die by his own hand. This rule finds frequent application in actions upon insurance policies where there is doubt whether the death of the insured was caused by accident or by suicide."

"The presumption against suicide is a rule of law which permits, and according to some courts requires, the conclusion, in the event of an unexplained death by violent injury, that the death was not suicidal, until credible evidence of self-destruction is offered. It is a strong presumption which should not be displaced by slight contrary proof, and can be overcome by circumstantial evidence only if it is of such quality and weight as to negative every reasonable inference of death by accident."

Another learned treatise describes the rule as follows:

"As a general rule, the presumption is that a death was accidental, not suicidal, where the cause was either accident or suicide and there is no evidence explaining the cause. Even self-inflicted death is presumed to have been accidental rather than suicidal. On the other hand it has been held that the presumption against suicide does not carry with it the presumption that the death was accidental, although the presumption against suicide is so strong that unless the evidence negatives every reasonable inference of death by accident, a finding of death by accident will be justified." 31A C.J.S., Evidence § 135, p. 286.

Kansas adopted the presumption against suicide rule of law as early as 1896. In *Mutual Life Ins. Co. v. Wiswell*, 56 Kan. 765, 44 Pac. 996 (1896), the issue was whether the insured had taken an overdose of opium to sleep or to commit suicide. Suicide would deny insurance under insured's insurance policy. Plaintiff administrator of the decedent's estate contended the overdose was accidental and meant to induce sleep. Defendant insurer contended decedent committed suicide. We affirmed the jury verdict in favor of the plaintiff, holding: "Where the evidence as to the death being accidental or suicidal is so nearly balanced as to leave the question in doubt, the presumption is in favor of the theory of accidental death." 56 Kan. 765, Syl. ¶ 2.

We have consistently adhered to that rule of law. See, *e.g.*, *Hawkins v. New York Life Ins. Co.*, 176 Kan. 24, 38, 269 P.2d 389 (1954); *Broyles v. Order of United Commercial Travelers*, 155 Kan. 74, 77, 122 P.2d 763 (1942); *Muzenich v. Grand Carniolian Slovenian Catholic Union*, 154 Kan. 537, 539-40, 119 P.2d 504 (1941); *O'Brien v. Insurance Co.*, 109 Kan. 138, 141, 197 Pac. 1100 (1921); *McCoy v. Insurance Co.*, 104 Kan. 571, 577, 179 Pac. 969 (1919).

In *Broyles v. Order of United Commercial Travelers*, 155 Kan. 74, the deceased was found on the floor of his place of business with a fractured skull. How the injury occurred was unknown.

Accident, suicide, and murder were all possibilities. Claim was made on an accidental death policy. The trial court sustained the defendant's demurrer and plaintiff appealed therefrom. This court reversed the trial court and, in so doing, extensively discussed burden of proof in relation to the presumption against suicide. This court stated:

"The burden was on the plaintiff to prove that the insured met his death as the result of bodily injuries effected solely through external, violent and accidental means, occasioned by the accident alone and independent of all other causes, and of that burden we shall treat later.

"On the other hand, the burden of proof was on the defendant to prove its exemption from liability because the death may have resulted from murder or from injuries intentionally inflicted by others. (See *Lamb v. Liberty Life Ins. Co.*, 129 Kan. 234, 282 Pac. 699, and cases cited.) It was therefore not incumbent on the plaintiff to prove the death was not caused by one or more of specific things covered by the exemption provisions of the policy.

"Insofar as plaintiff's proof is concerned, certain presumptions applicable are to be noted. First, there is a presumption that no sane person commits suicide. See *Mutual Life Ins. Co. v. Wiswell*, 56 Kan. 765, 44 Pac. 996, 35 L.R.A. 258; *Railroad Co. v. Hill*, 57 Kan. 139, 45 Pac. 581; 22 C.J. 94. Second, the presumption as to the cause of decedent's death is against murder. *(Warner v. U. S. Mutual Acc. Assoc.*, 8 Utah 431, 32 Pac. 696; *Travellers' Insurance Co. v. McConkey*, 127 U.S. 661, 32 L. Ed. 308, 8 S. Ct. 1360; *Lampkin v. Travelers' Ins. Co.*, 11 Colo. App. 249, 52 Pac. 1040.)

"Passing for the moment the question whether the injuries caused the death, we shall consider whether they were effected solely by external, violent and accidental means. There can be no doubt the proof was ample they were external and violent. Did plaintiff prove they were accidental? The general rule, as stated in 29 Am. Jur. 1082 (Insurance, § 1443), is:

" 'Generally speaking, one seeking to recover on a policy of insurance has the burden of proving a loss from causes within the terms of the policy. . . . In this respect, the authorities support the general rule that in an action on a policy insuring against death caused solely by external, violent, and accidental means, the burden of proof is on the plaintiff to show from all the evidence that the death of the insured was the result of accidental as well as external and violent means, but that where death by unexplained, violent, and external means is established, a presumption is thereby created or prima facie proof is thereby made of the fact that the injuries were accidental, without direct and positive testimony on that point, since the law will not presume that the injuries were inflicted intentionally by the deceased or by some other person.'

"See, also, 29 Am. Jur. 732 (Insurance, § 972). Also see notes in 20 A.L.R. 1123, 57 A.L.R. 972, and 116 A.L.R. 396, where many cases supporting the above quotation may be found. And we are not without authority

of our own. In *McCullough v. Liberty Life Ins. Co.*, 125 Kan. 324, 264 Pac. 65, 57 A.L.R. 963, it was held: ·.

" 'Ordinarily where one person intentionally injures another without misconduct on the part of the latter, and unforeseen by him, such injury as to the latter is accidental.'

" 'And where an accident insurance policy provided for payment in the event the insured should sustain bodily injury directly and independently of any other cause, through external, violent and purely accidental means, the killing of the assured by a third person, though intentional, is deemed accidental within the meaning of the policy if the killing was not brought about by the agency of the assured.' (Syl. ¶¶ 1, 2.)

"See, also, *Spence v. Equitable Life Assurance Soc.*, 146 Kan. 216, 69 P.2d 713." 155 Kan. at 77-78.

In *Muzenich v. Grand Carniolian Slovenian Catholic Union*, 154 Kan. 537, the deceased died as a result of drinking carbolic acid. The jury found the death to be accidental. On appeal, the insurer contended the trial court erred in denying its motion for a directed verdict. The policy involved was ordinary life, not an accident policy. The deceased, like in the case before us, was found dead in her hospital bathroom and was being treated for depression and had expressed suicidal thoughts. This court affirmed the trial court, stating:

"The defendant had the burden of establishing that deceased committed suicide. (See *Mutual Life Ins. Co. v. Wiswell*, 56 Kan. 765, 44 Pac. 996.) It was compelled to rely wholly upon circumstantial evidence. Under such circumstances, where the physical facts and circumstances would justify a conclusion on one hand that the defendant took the carbolic acid into her mouth by mistake, either as to its effect or as to what it was, or on the other hand that she took it with the intention of destroying her life, we cannot say that as a matter of law one proposition or the other has been proven. It is the duty of the trier of the facts to take all of the proven and admitted circumstances and draw the inferences from them which it deems reasonable. In performing this service the trier of facts is not compelled to believe any particular testimony and this court cannot say as a matter of law that any particular circumstance was established when there was a question raised before the jury as to its being established. Thus it cannot as a matter of law be said that the substance taken into the mouth of deceased was carbolic acid or that she drank it knowing it was carbolic acid, nor that she knew it would kill her if she did drink it. There was testimony both ways as to her being of the suicidal type, so that it cannot be said as a matter of law that she was of the suicidal type. When thus viewed it must be said that the defendant's evidence is equally consistent with the hypothesis that the death of the insured was accidental and with the hypothesis that it was suicidal, and was thus insufficient to require a directed verdict

for defendant. (See *McKenzie v. New York Life Ins. Co.*, 153 Kan. 439, 112 P.2d 86.) Where the evidence tending to prove one theory or the other is so nicely balanced it is proper to consider the rule that the presumption is against suicide." 154 Kan. at 539-40.

As we have expressed on various occasions in the past, we are at a loss to understand why the Eighteenth Judicial District so often departs from PIK instructions when appropriate instructions are contained therein covering particular situations. See, for example, *State v. Pioletti*, 246 Kan. 49, 785 P.2d 963 (1990). This ancient, but not venerable, tradition creates many unnecessary issues in appeals from that judicial district. PIK Civ. 2d 2.72 should have been given herein. It is an accurate statement of the applicable law. But it was not given and instruction No. 14 was given in its place. Is this reversible error, as contended by Provident? We believe not under the circumstances herein.

Weighing heavily in our conclusion are the particular facts involved herein. The deceased was a careless smoker with a long history of accidentally burning his clothes and household goods. One of the health problems causing his depression was extremely malodorous flatulence arising from abdominal surgery. He had a history of striking matches in the belief the burning sulphur ameliorated the unpleasant odor. The fire investigation herein revealed the deceased was sitting on the toilet when his clothing caught fire. He was wearing cotton flannel pajamas with the pants in place at the waist. Burned matches were on the floor. There was evidence the fire started in the crotch area of the pajamas. Provident was seeking to prove that the deceased committed suicide by intentionally setting fire to his crotch. There was no evidence that an accelerant was used. The jury was probably influenced by the unlikelihood that anyone, particularly a physician, would select this bizarre vehicle for suicide over less painful and more certain means.

As noted by the Court of Appeals and as previously cited herein, instruction No. 9 did advise the jury that plaintiff had the burden of proof that the death was accidental.

The Court of Appeals adequately handled one additional point raised in this issue when it held:

"Provident's other line of argument with respect to the presumption against suicide is that no instruction should have been given since Dr. Evans

was not a sane and normal person. The comment to PIK Civ. 2d 2.72 states: 'It would appear this instruction would only be proper when the deceased was sane at the time of death.'

"The record is devoid of any evidence that Dr. Evans was insane at the time of his death. He was clearly suffering from depression, but he had not been adjudicated insane, and there was no testimony to the effect that his condition warranted such a finding of insanity. In order for Provident to prevail on this point, the trial court would have to find as a matter of law that Dr. Evans was insane for the purposes of the presumption against suicide merely because he was being treated for severe depression. Provident cites no case law which would support such a finding nor is any apparent." 15 Kan. App. 2d at 102-03.

We conclude that no reversible error has been shown in the giving of instruction No. 14.

### MENTAL INFIRMITY

This issue was adequately handled by the Court of Appeals when it stated:

"The accidental death policy under which Dr. Evans was insured has an exclusion for losses caused by mental infirmity. Provident contends that the trial court erred in refusing to give an instruction requiring the jury to find for Provident if it found that Dr. Evans' death was due to his mental infirmity.

"A party is entitled to a jury instruction in explaining its theory of the case when there is sufficient evidence to support such a theory. *McGraw v. Sanders Co. Plumbing & Heating, Inc.*, 233 Kan. 766, Syl. ¶ 3, 667 P.2d 289 (1983). Provident argues that there must have been sufficient evidence to support its mental infirmity theory because Evans' motion for directed verdict on the question of mental infirmity was overruled.

"Arguably, the evidence established that Dr. Evans had a mental infirmity; he was severely depressed. However, there was no evidence adduced at trial as to how this mental infirmity would have resulted in his death other than by an intentional suicidal act. Indeed, Provident's entire theory of the case seems to have been that Dr. Evans committed suicide. All of the evidence adduced by Provident was directed toward a showing that Dr. Evans knew exactly what he was doing, formed an intent to take his own life, and carried out his plan.

"The trial court did not err in refusing to give an instruction on Provident's mental infirmity theory." 15 Kan. App. 2d at 103.

In its brief, Provident states that "[f]rom the evidence presented, the jury could have found that Evans' death resulted from mental infirmity and rendered a verdict for Provident. If the jury was not convinced the fire was started with suicidal intent, it could have concluded it was an intentional or deliberate act which

resulted from his mental infirmity as related to his preoccupation with punishment for his sins or otherwise."

If the jury found that Dr. Evans intentionally started the fire without suicidal intent, the exclusion against "intentionally self-inflicted injury" would apply, and that was instructed on in instruction No. 9.

We find no error in this point.

A final claim of error in this area is that the trial court erred in overruling Provident's motions for a directed verdict and for judgment notwithstanding the verdict. The grounds on which these claims are made have been discussed and determined adversely to Provident in our discussion of the three claims of instructional error.

## EXPERT TESTIMONY

For its next issue, Provident contends the trial court improperly restricted the testimony of its expert, Dr. Herbert Modlin.

In his deposition, Dr. Modlin, a psychiatrist, testified that in his opinion Dr. Evans committed suicide. The district court granted plaintiff's motion in limine to exclude this ultimate conclusion.

The qualifications of an expert witness and the admissibility of his testimony are within the sound discretion of the trial court. *Plains Transp. of Kan., Inc. v. King*, 224 Kan. 17, 21, 578 P.2d 1095 (1978). The trial court has broad discretion to control examination of witnesses and reviewing courts will not interfere unless discretion has been abused. *State v. Mitchell*, 234 Kan. 185, 188, 672 P.2d 1 (1983).

Dr. Modlin's testimony was based upon a procedure he categorized as a "psychological autopsy," performed by reviewing medical records, hospital records, deposition testimony, and other evidence. From his review, Dr. Modlin concluded Dr. Evans was suicidal on the day of his death and that he had, in fact, committed suicide. The limitation placed upon his testimony went only to his opinion on the ultimate fact—that Dr. Evans committed suicide. The balance of his testimony concerning the "psychological autopsy," including Dr. Modlin's opinion that Dr. Evans was suicidal on the day of his death, was presented to the jury. We do not have the question before us on the admissibility

of a "psychological autopsy" in general and express no opinion thereon. Rather, we have the narrow issue of whether or not the limitation respecting the ultimate conclusion was an abuse of discretion.

We find no abuse of discretion in the trial court's limitation on Dr. Modlin's testimony.

## PREJUDGMENT AND POST-JUDGMENT INTEREST

As to the prejudgment interest aspect of this issue, the Court of Appeals correctly held that this was a matter not raised before the trial court and hence cannot be raised for the first time on appeal, citing *Kansas Dept. of Revenue v. Coca Cola Co.*, 240 Kan. 548, 552, 731 P.2d 273 (1987), in support thereof.

Plaintiff contends the trial court erred in awarding post-judgment interest at seven percent pursuant to K.S.A. 1990 Supp. 40-447 rather than under the regular post-judgment interest statute, K.S.A. 16-204. The point is well taken.

K.S.A. 1990 Supp. 40-447(a) provides, in pertinent part:

"Notwithstanding any other provision of law, each insurer admitted to transact life insurance in the state of Kansas which fails or refuses to pay the proceeds of, or payments under, any policy of life insurance issued by it within 10 days after the date of receipt of due proof of death in the manner and form requested by the policy, shall pay interest on any moneys payable and unpaid after the expiration of such 10-day period at an annual rate of not less than the current rate of interest on death proceeds left on deposit with the insurer plus 1% computed from the date of said receipt."

K.S.A. 16-204 sets forth the rate of interest on judgments.

A reading of K.S.A. 1990 Supp. 40-447 in its entirety shows that it is intended to apply to situations where an insurance company fails to pay a properly submitted claim within 10 days. Section (e) of the statute provides:

"The commissioner of insurance may adopt such rules and regulations necessary to provide for the enforcement and administration of this act."

K.S.A. 1990 Supp. 40-447 does not apply to *post-judgment* interest. Where a judgment has been entered, K.S.A. 16-204 controls the rate of interest to be applied.

Although we reach this conclusion on a different rationale than did the Court of Appeals, its result was correct. The trial court's post-judgment interest determination must be reversed and the

case remanded to the district court for entry of post-judgment interest pursuant to K.S.A. 16-204.

## ATTORNEY FEES

The balance of the issues concern attorney fees. They are:
1. Provident's claim that attorney fees should not have been awarded against it by the trial court;
2. plaintiff/cross-appellant's claims that:
    (a) insufficient attorney fees were awarded by the trial court;
    (b) discovery should have been permitted as to amounts spent by Provident in defense of this action; and
    (c) appellate attorney fees be awarded.

Provident contends that the trial court erred in awarding attorney fees to plaintiff. K.S.A. 40-256 provides:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 40-201, and including in addition thereto any fraternal benefit society and any reciprocal or interinsurance exchange on any policy or certificate of any type or kind of insurance, if it appear from the evidence that such company, society or exchange has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs . . . ."

The question of whether an insurer has refused to pay without just cause or excuse is one of fact for the trial court. *Farm Bureau Mutual Ins. Co. v. Carr*, 215 Kan. 591, 598, 528 P.2d 134 (1974). In refusing to pay a claim, an insurance company has a duty to make a good faith investigation of the facts surrounding the claim. *Brown v. Combined Ins. Co. of America*, 226 Kan. 223, 227, 597 P.2d 1080 (1979). If there is a bona fide and reasonable factual ground for contesting the insured's claim, there is no failure to pay without just cause or excuse. *Koch, Administratrix v. Prudential Ins. Co.*, 205 Kan. 561, 565, 470 P.2d 756 (1970). Whether an insurance company's refusal to pay is without just cause or excuse is determined on the facts and circumstances in each case. *Smith v. Blackwell*, 14 Kan. App. 2d 158, 165, 791 P.2d 1343 (1989), *rev. denied* 246 Kan. 769 (1990).

Whether there was just cause to refuse payment and, therefore, justification for denial of attorney fees is in the trial court's sound

discretion. *DiBassie v. American Standard Ins. Co. of Wisconsin*, 8 Kan. App. 2d 515, Syl. ¶ 8, 661 P.2d 812 (1983). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court. *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973).

Plaintiff's claim was ultimately denied by Joe Roberts, Jr., Provident's manager of the life claims department. Roberts testified he reviewed the results of Provident's investigation herein before making the decision. Included was a report from the Pinkerton agency that Provident had assigned to investigate the fire. Roberts testified nothing in the Pinkerton report supported death by suicide. After receipt of the Pinkerton report, Provident assigned one of its own investigators to the case. When this report was received, Roberts testified he "felt like we did not have evidence to establish it was accidental." The evidence from the treatment by health care providers was to the effect that Dr. Evan's depression had improved with the administration of electric shock therapy, and they did not consider him suicidal. Neither the Wichita Fire Department nor the county coroner had ruled the death a suicide. The bizarre nature of the death must also be considered a factor.

We must conclude that no abuse of discretion has been shown in the trial court's award of attorney fees pursuant to K.S.A. 40-256.

On the issues relative to the amount of attorney fees awarded by the trial court, the Court of Appeals adequately determined the matter as follows:

"Evans argues that the trial court should have awarded her more attorney fees because the higher amount she requested was reasonable.

"Evans was awarded attorney fees pursuant to K.S.A. 40-256, which reads: '[T]he court in rendering such judgment shall allow the plaintiff a *reasonable* sum as an attorney's fee for services in such action.' (Emphasis added.)

"This court discussed the operation of K.S.A. 40-256 in *Hochman v. American Family Ins. Co.*, 9 Kan. App. 2d 151, 154-55, 673 P.2d 1200 (1984):

" 'These statutes allow "reasonable" fees to parties who have prevailed against an insurance company in certain cases. . . . In discussing the purpose of attorney fee statutes, the Kansas Supreme Court has stated the

purpose of the award of fees is not to punish the insurance company but " 'to permit the allowance of a fair and reasonable compensation to the assured's attorney . . . .' " *Lattner v. Federal Union Ins. Co.*, 160 Kan. 472, 481, 163 P.2d 389 (1945). The amount of attorney fees to be awarded is a matter largely within the trial court's discretion. *Buchanan v. Employers Mutual Liability Ins. Co.*, 201 Kan. 666, 443 P.2d 681 (1968). An abuse of discretion arises only if no reasonable person would have taken the same position as the district court. See *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973).'

"There is nothing in the record to indicate that the $71,645.65 the trial judge allowed to Evans is not a 'reasonable' fee. The record does disclose that Evans originally claimed $91,541.75. A hearing was held on the subject of attorney fees, and Richard C. Hite appeared on behalf of Evans as an expert witness. Hite testified that the $91,541.75 would have been a reasonable fee for the work done on the case. Hite gave no testimony that anything less than that amount would be unreasonable or that the $71,645.65 ultimately settled on by the judge would not be a reasonable fee.

"The trial court itself is an expert in the area of attorneys' fees and can draw on and apply its own knowledge and expertise in evaluating their reasonableness. *Buchanan v. Employers Mutual Liability Ins. Co.*, 201 Kan. 666, 676, 443 P.2d 681 (1968). In the present case, the trial judge awarded Evans attorney fees at a rate of $85 per hour for 842.89 hours. There has been no showing that the trial judge abused his discretion.

"Provident argues that the amount of attorney fees awarded was improper because K.S.A. 40-256 allows the award of fees for only one attorney or firm. It cites for support *Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 713, 366 P.2d 219 (1961), which states:

" 'The statute [K.S.A. 40-256] provides for the allowance of a *reasonable sum* as an attorney fee to be recovered and collected as a part of the costs. It does not contemplate an amount in the nature of a speculative or contingent fee conditioned on winning the case, but only a reasonable fee for the appellee to pay his attorney for prosecuting the case, and the statute does not contemplate a fee for more than one attorney or firm of attorneys.'

"Evans correctly points out, and Provident admits in its reply brief, that *Wolf* did not involve a situation in which a claim was being made for fees based on the services of more than one attorney.

"Provident also cites *Akins v. Illinois Bankers Life Assurance Co.*, 166 Kan. 648, 203 P.2d 180 (1949), in support of its argument. The only relevant language in the opinion is as follows:

" 'Appellant's contention the fee of $500 allowed was excessive has some merit. . . . Appellee seeks to justify the allowance as not excessive because two attorneys were employed by her. That is not the test. In the determination of what constitutes a reasonable sum under the statute the amount involved must always be one of the controlling factors. When that is given consideration, along with the fact there was no spirited trial but a submission of the cause solely on testimony given by appellee at a former trial, we

feel impelled to hold the fee was excessive and should be reduced to $400.'
166 Kan. at 656-57.

"The Tenth Circuit has cited both *Akins* and *Wolf* in a case in which it refused to increase the amount of attorney fees awarded:
'Here the recovery was substantially less than the fees and expenses claimed. The total claim was based upon the services of two attorneys who were not members of the same firm and who included time and expenses in state court litigation prosecuted by the elevator company concerning the same subject matter but which was of questionable necessity or benefit in relation to the instant case. *The statute warrants the allowance of an attorney's fee based upon representation of a single attorney or firm.* Wolf v. Mutual Benefit Health and Accident Assn., 188 Kan. 694, 366 P.2d 219 (1961). See also Akins v. Illinois Bankers Life Assur. Co., 166 Kan. 648, 203 P.2d 180 (1949). We are not impressed with the elevator company's argument that since its attorneys were associated on this particular case they represented a firm within the contemplation of *Wolf.* Nor do we think the court was required to compensate for all of the time devoted by these attorneys to extensive proceedings collateral to the present case, a substantial portion of which was abortive or for the unsuccessful purpose of avoiding federal jurisdiction. We think there could be properly weighed the necessity and productivity of the hours claimed in relationship to the circumstances of the litigation before it.' *Grain Dealers Mut. Ins. Co. v. Farmers U. Coop. E. & S. Ass'n,* 377 F.2d 672, 682-83 (10th Cir. 1967).

"In our opinion, *Akins* and *Grain Dealers* stand for the proposition that the employment of two attorneys may not be used to justify an otherwise excessive fee. The language in *Wolf* may be read as an admonition that it is not reasonable to hire two attorneys to do the work of one. However, K.S.A. 40-256 simply requires that the total fee charged be 'reasonable.' We hold that a plaintiff may employ more than one attorney as long as the total fee is reasonable for the work required. Conversely, an unreasonable fee is not rendered reasonable for the purpose of K.S.A. 40-256 simply because a plaintiff hires more than one attorney. There is nothing in the record to indicate that the amount of attorney fees awarded by the trial judge was not reasonable; indeed, it was $20,000 less than the figure which Evans' expert testified was reasonable.

"Provident does not argue that the fees were in any way excessive but that only one of Evans' lawyers should be awarded fees. That argument is not supported by the plain wording of K.S.A. 40-256 or the questionable line of case law cited by Provident. The trial judge did not abuse his discretion in the amount of attorney fees awarded." 15 Kan. App. 2d at 107-10.

Next, plaintiff contends the trial court abused its discretion in denying her request to discover the time spent and amount charged by attorneys for defendant Provident in this action. Plain-

tiff contends this was relevant information to what attorney fees should be awarded.

No correlation between the amount of time and money expended in defending a case and that expended in prosecuting a case is shown.

The control of discovery is entrusted to the sound discretion of the trial court and orders concerning discovery will not be disturbed on appeal in the absence of a clear abuse of discretion. *In re Marriage of Adams*, 240 Kan. 315, Syl. ¶ 4, 729 P.2d 1151 (1986). Evans makes no attempt to show how she was prejudiced by the trial court's ruling and, in fact, brought in her own expert witness to testify with regard to attorney fees. No abuse of discretion by the trial court is shown.

This brings us to the issues involving appellate attorney fees.

Plaintiff's brief contains a motion for additional attorney fees incurred in connection with the appeal. In the appendix to the brief is data on time expended to the date of the filing thereof (September 5, 1990).

In its decision, the Court of Appeals remanded the case to the district court for determination of appellate attorney fees. This is contrary to our Rule 7.07(b) (1990 Kan. Ct. R. Annot. 37), which provides:

"ATTORNEY FEES. Appellate courts may award attorney fees for services on appeal in any case in which the trial court had authority to award attorney fees.

"Any subsection (b) motion for attorney fees on appeal shall be made pursuant to Rule 5.01.

"An affidavit shall be attached to the motion specifying: (1) the nature and extent of the services rendered; (2) the time expended on the appeal; and (3) the factors considered in determining the reasonableness of the fee. (See MRPC 1.5 Fees.)

"The motion shall be filed with the Clerk of the Appellate Courts within fifteen (15) days after oral argument. If oral argument is waived, the motion shall be filed within fifteen (15) days after either the day of argument waiver or the date the case appears on the summary calendar, whichever is the later."

Civil appellate attorney fee awards are to be determined by the appellate court hearing the appeal. Motions for attorney fees incurred before the Court of Appeals should be determined by the Court of Appeals. We note the motion filed herein is not in

compliance with the rule. The data attached to support the motion is not in affidavit form. Additionally, nothing about the factors required by Rule 7.07(b)(3) is included. Further, the motion was filed more than two months in advance of oral argument before the Court of Appeals rather than "within fifteen (15) days after oral argument." The requirement that the motion be filed *after* oral argument is logical, as it would include all time expended.

We conclude that the whole question of award of attorney fees for appellate work at the Court of Appeals level must be remanded to the Court of Appeals for its determination.

Plaintiff's supplemental brief filed on April 17, 1991, before this court after review was granted, contains a new motion for additional fees for appellate work. The supporting data is again included in the appendix and not in compliance with Rule 7.07(b) for all the reasons previously referred to in discussing the like motion filed before the Court of Appeals.

We believe it is the better practice for motions for awarding attorney fees pursuant to K.S.A. 40-256 and Rule 7.07 to be determined sequentially. Specifically, it would be inappropriate in petition for review cases to determine attorney fee requests on appellate work before us prior to the Court of Appeals determining attorney fee requests for appellate work before it. To hold otherwise could result in overlapping or gaps in fees if allowed. We note the data presented to us includes much time expended at the Court of Appeals level. After the Court of Appeals has decided the question on remand, counsel for plaintiff should request our consideration of the attorney fee motion filed herein if further consideration is desired. Failure to do so within 15 days shall be deemed abandonment of the motion.

All issues before us have now been determined. However, a unique double remand situation exists. The case is being remanded: (1) to the district court for entry of appropriate post-judgment interest; and (2) to the Court of Appeals for determination of the motion seeking an award of attorney fees for appellate work in the Court of Appeals. Obviously, the case cannot be remanded to two courts simultaneously. We conclude the procedure to be followed is this:

1. The case is to be remanded to the district court;

2. within 10 days after the district court has made its determination, it shall so notify the Court of Appeals; and
3. upon receipt of said notice, jurisdiction of the case shall be in the Court of Appeals which court shall proceed to determine the attorney fee matter remanded to it herein.

The judgment of the district court is affirmed in part and reversed in part, and the case is remanded for the determination required by this decision. The judgment of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded for the determination required by this decision. The sequence of remands shall be as set forth in the opinion.

ALLEGRUCCI, J., concurring and dissenting: I concur with the majority that K.S.A. 16-204 controls the rate of interest on the judgment and that the appropriate appellate court and not the district court should award attorney fees for appellate work.

I respectfully dissent from the majority holding that this court has jurisdiction to hear this appeal on its merits. I disagree with syllabus ¶ 1 and the corresponding portions of the majority opinion. The majority acknowledges that under the *Snodgrass* rule, Provident's notice of appeal was out of time, since it should have been filed within 30 days of July 7, 1989. I disagree that the *Snodgrass* rule "constituted a departure from our prior rulings" which requires a retroactive application that would be unfair in the present case. We did not mention "any prior rulings" in *Snodgrass*, let alone depart from them.

In *Snodgrass* we interpreted the meaning of the term "final decision" under K.S.A. 1989 Supp. 60-2102(a)(4) and adopted the federal rationale as stated in *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 100 L. Ed. 2d 178, 108 S. Ct. 1717 (1988). The rule we adopted in Snodgrass is applicable to the present case. It is no less unfair to bar the appeal in the present case than it was to allow the appeal in Snodgrass. I would find that the notice of appeal was not timely and grant partial dismissal of the appeal.

SIX, J., dissenting in part and concurring in part: I dissent from syllabus ¶ 10 and the corresponding portion of the majority opinion. I concur in the result reached by the remainder of the opinion.

My dissent relates to the interpretation extended to K.S.A. 40-256 and attorney fees on appeal under the facts of this case. The Court of Appeals remanded with directions to award post-judgment interest and, under K.S.A. 40-256, reasonable attorney fees for appellate work. I agree with the unanimous panel of the Court of Appeals.

The majority opinion has established a post-appeal travel schedule for the parties. The first stop is at the district court, followed by a trip to the Court of Appeals, and finally to this court, "if further consideration is desired." The plan is implemented by a vehicle characterized as "a unique double remand."

K.S.A. 40-256 provides:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 40-201, and including in addition thereto any fraternal benefit society and any reciprocal or interinsurance exchange on any policy or certificate of any type or kind of insurance, if it appears from the evidence that such company, society or exchange has refused without just cause or excuse to pay the full amount of such loss, *the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal,* to be recovered and collected as a part of the costs. *Provided, however,* That when a tender is made by such insurance company, society or exchange before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed." (Emphasis added.)

The phrase "including proceeding upon appeal" was added by the legislature in 1967. L. 1967, ch. 257, § 1.

The majority opinion discusses Rule 7.07 (1990 Kan. Ct. R. Annot. 37).

Rule 7.07 was amended in 1989 to add current subsection (b) relating to the award of attorney fees for services on appeal in any case in which the trial court had authority to award attorney fees. Prior to the 1989 amendment, subsection (b) addressed frivolous appeals only.

Before the Supreme Court's 1989 amendment to Rule 7.07, the Court of Appeals had held in *Vogel v. Haynes,* 11 Kan. App. 2d 454, 457-58, 730 P.2d 1096, *rev. denied* 240 Kan. 806 (1986), and in *Stafford v. Karmann,* 2 Kan. App. 2d 248, 252, 577 P.2d 836 (1978), that it had authority on appeal to award fees for appellate work to carry out the intent of the statute involved in

each case. *Karmann* related to mandatory awarding of fees in automobile negligence actions under what is now K.S.A. 1990 Supp. 60-2006. *Haynes* concerned mandatory awarding of fees under K.S.A. 61-2701 *et seq.,* the Kansas Small Claims Procedure Act.

K.S.A. 1990 Supp. 60-1610(b)(4) relates to costs and fees in domestic actions. Under that statute, the trial court may award attorney fees, in its discretion, based on justice or equity. Although attorney fees were requested in *In re Marriage of Arndt,* 239 Kan. 355, 357, 719 P.2d 1236 (1986), we held the appeal (involving a property settlement agreement in a divorce case) was not frivolous and, consequently, under Rule 7.07(b) attorney fees for services on appeal could not be awarded.

In my view, the 1989 amendment to Rule 7.07 was effected to clarify and authorize a procedure for attorney fees for appellate work in discretionary situations.

Kansas has always adhered to the American rule, which reasons that attorney fees are not recoverable absent statutory authority. We departed from the English rule, which provided that the prevailing party must normally pay the attorney fees of both parties, early in our history. *Swartzell et al. v. Rogers,* 3 Kan. *380, *383 (1866). See Leslie, *Recovery of Attorney Fees—An Historical Perspective,* 53 J.K.B.A. 154 (1984).

The legislature, under the American rule, has provided in K.S.A. 40-256 for attorney fees in certain actions against insurance companies. K.S.A. 40-256 was specifically amended in 1967 to provide for appellate fees.

I would follow the statute and shorten the trip for the parties with a one-stop disposition at the trial court level.

LOCKETT, J., joins in the foregoing concurring and dissenting opinion.